# Exhibit B

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VIASAT, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. |
| ) | |
| INTELLECTUAL VENTURES I LLC and ) | **JURY TRIAL DEMANDED** |
| INTELLECTUAL VENTURES II LLC, ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Viasat, Inc. ("Viasat") seeks a declaratory judgment that Viasat does not directly or indirectly infringe United States Patent Nos. 7,324,469 and 8,027,326, as follows:

## NATURE OF THE ACTION

1. This is an action for a declaratory judgment of non-infringement arising under the patent laws of the United States, Title 35 of the United States Code. Viasat requests this relief because defendants Intellectual Ventures I LLC and Intellectual Ventures II LLC have recently filed lawsuits against Viasat's customers claiming that Viasat's in-flight connectivity systems infringe U.S. Patent Nos. 7,324,469 and 8,027,326. This litigation campaign directly accuses Viasat's products of patent infringement, impacting Viasat's business and relationships with its customers, and creating a justiciable controversy between Viasat and Intellectual Ventures I LLC and Intellectual Ventures II LLC.

## THE PARTIES

2. Plaintiff Viasat is a global communications company organized and existing under the laws of the State of Delaware, with its principal place of business at 6155 El Camino Real, Carlsbad, California, 92009. Viasat has significant expertise in engineering satellite,

– 1 –

terrestrial wireless, and optical communications solutions. Among other products and services, Viasat provides in-flight connectivity systems to airline customers, which allow airline passengers to access the Internet, according to the airline's policies and procedures.

3. Defendant Intellectual Ventures I LLC ("Intellectual Ventures I") is a limited liability company organized and existing under the laws of the State of Delaware, with a claimed principal place of business at 3150 139th Avenue SE, Bellevue, Washington, 98005.

4. Intellectual Ventures I alleges that it is "the owner of all rights, title, and interest in and to" U.S. Patent No. 8,027,326 (the "'326 patent"), attached as Exhibit 1. *Intellectual Ventures I LLC v. Southwest Airlines Co.*, No. 24-277, D.I. 1 ¶¶ 4, 33 (W.D. Tex. Nov. 2, 2024); *Intellectual Ventures I LLC v. American Airlines, Inc.*, No. 24-980, D.I. 1 ¶¶ 4, 31 (E.D. Tex. Nov. 2, 2024).

5. Defendant Intellectual Ventures II LLC ("Intellectual Ventures II") is a limited liability company organized and existing under the laws of the State of Delaware, with a claimed principal place of business at 3150 139th Avenue SE, Bellevue, Washington, 98005.

6. Intellectual Ventures II alleges that it is "the owner of all rights, title, and interest in and to" United States Patent No. 7,324,469 (the "'469 patent"), attached as Exhibit 2. *I.V. v. Southwest*, *supra*, D.I. 1 ¶¶ 5, 35; *I.V. v. American*, *supra*, D.I. 1 ¶¶ 5, 33.

## JURISDICTION AND VENUE

7. This action arises under the Declaratory Judgment Act, 28 U.S.C. § 2201, and under the patent laws of the United States, 35 U.S.C. §§ 1-390.

8. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338(a), and 2201(a). An actual, substantial, immediate, and continuing controversy exists between Viasat and Intellectual Ventures I that requires a declaration of rights by this

Court regarding the '326 patent, and between Viasat and Intellectual Ventures II that requires a declaration of rights by this Court regarding the '469 patent.

9. The litigation brought by Intellectual Ventures I and Intellectual Ventures II against Southwest Airlines Co. ("Southwest") and American Airlines, Inc. ("American") directly accuses Viasat's in-flight connectivity systems of patent infringement, impacting Viasat's business and relationships with its customers.

10. This Court has general personal jurisdiction over Intellectual Ventures I under the laws of the State of Delaware and consistent with the underlying due process principles of the United States Constitution because Intellectual Ventures I is a limited liability company organized and existing under the laws of the State of Delaware.

11. This Court has general personal jurisdiction over Intellectual Ventures II under the laws of the State of Delaware and consistent with the underlying due process principles of the United States Constitution because Intellectual Ventures II is a limited liability company organized and existing under the laws of the State of Delaware.

12. Venue is proper in this District under at least 28 U.S.C. §§ 1391(b), (c), because Intellectual Ventures I and Intellectual Ventures II are residents of this District.

## THE '326 PATENT

13. On July 18, 2011, Intellectual Ventures I acquired U.S. Patent Application No. 11/033,524 from Callahan Cellular L.L.C.

14. On September 27, 2011, the United States Patent and Trademark Office issued the '326 patent from Application No. 11/033,524, entitled "Method and System for High Data Rate Multi-Channel WLAN Architecture." Ex. 1.

15. The '326 patent concerns "a system and method for high data rate multi-channel wireless communications." Ex. 1 at 1:15-17. The patent contemplates "a way to achieve very high data rate expanded bandwidth (wide band) WLAN operations reusing existing single channel radio designs" that "provides a dual-channel form of operation for greater flexibility and performance across multiple platforms." *Id.* at 7:59-63. Claim 1 recites:

> A method for increasing data rates and data throughput in a network, the method comprising:
>
> selecting at least a first channel and a second channel, wherein the first channel and the second channel are adjacent without any other channels there between, wherein the first channel and the second channel each have a plurality of data subcarriers, wherein the data subcarriers of the first channel and the data subcarriers of the second channel are separated by a frequency gap corresponding to one or more guard bands between the first and second channels;
>
> partially filling the frequency gap between the first channel and the second channel by adding one or more data subcarriers into the frequency gap such that the one or more guard bands are at least partially filled with at least some of the one or more data subcarriers using full spectral synthesis capability of a fast fourier transform or an inverse fast fourier transform;
>
> combining the first channel and the second channel using channel bonding with orthogonal frequency division multiplexing (OFDM); and
>
> transmitting data subcarriers occupying the first channel, the second channel, and the frequency gap in parallel to a receiver.

*Id.* at 17:26-49.

16. During prosecution, the Examiner rejected all pending claims of what would become the '326 patent six times, on July 7, 2008; January 26, 2009; July 7, 2009; January 26, 2010; July 20, 2010; and December 27, 2010.

17. In telephone calls with the applicant's representative on May 6 and May 9, 2011, the Examiner proposed an Examiner's amendment to the pending independent claims. *See* Ex. 3 at 6. The applicant accepted this amendment. *Id.*

18. On May 16, 2011, the Examiner issued a Notice of Allowance including the Examiner's amendment, which added to each independent claim the requirement that the "one or

– 4 –

more guard bands are at least partially filled with at least some of the one or more data subcarriers *using full spectral synthesis capability of a fast fourier transform or an inverse fast fourier transform*." Ex. 3 at 6 (emphasis in original).

19.  Following the Examiner's amendment, claim 1 requires "partially filling the frequency gap between the first channel and the second channel by adding one or more data subcarriers into the frequency gap such that the one or more guard bands are at least partially filled with at least some of the one or more data subcarriers *using full spectral synthesis capability of a fast fourier transform or an inverse fast fourier transform*."

20.  A Fourier transform is an integral transform that can take a time-domain function as input and output a frequency-domain function showing the extent of spectral components present in the original time-domain function.

21.  A time-domain function characterizes the variation of a signal with respect to time, while a frequency-domain function characterizes the variation of a signal with respect to frequency.  A time-domain signal can be converted into a frequency-domain signal by Fourier transform, and a frequency-domain signal can also be converted into a time-domain signal by inverse Fourier transform.  The same signal can be uniquely represented with a time-domain function or with a frequency-domain function.

22.  A fast Fourier transform converts a finite sequence of signal samples in one domain, such as the discrete time domain, into a sample sequence in the frequency domain. Similarly, an inverse fast Fourier transform converts a finite sequence of discrete samples in the frequency domain into a sample sequence in the discrete time domain.

23.  An engineer will choose whether or not to use a fast Fourier transform depending on whether it is suitable for the task.  Using a fast Fourier transform has advantages and

– 5 –

disadvantages. One disadvantage of the fast Fourier transform is that it cannot provide output that is continuous in the time domain.

24. Thus, whether to use a fast Fourier transform instead of some other method of calculating a Fourier transform will depend, in part, on whether the output signal must be continuous in the time domain or may be discrete in the time domain.

## VIASAT DOES NOT INFRINGE THE '326 PATENT

25. In *I.V. v. Southwest*, Intellectual Ventures I alleges that Southwest infringes the '326 patent by using Viasat's in-flight connectivity systems. *I.V. v. Southwest*, *supra*, D.I. 1 ¶¶ 87-101; *id.*, D.I. 1-11 *passim*. For the convenience of the Court, Viasat attaches the complaint in *I.V. v. Southwest*, D.I. 1, as Ex. 4, and the accompanying chart showing infringement allegations regarding the '326 patent, *I.V. v. Southwest*, D.I. 1-11, as Ex. 5.

26. In *I.V. v. American*, Intellectual Ventures I alleges that American infringes the '326 patent by using Viasat's in-flight connectivity systems. *I.V. v. American*, *supra*, D.I. 1 ¶¶ 85-99; *id.*, D.I. 1-12 *passim*. For the convenience of the Court, Viasat attaches the complaint in *I.V. v. American*, D.I. 1, as Ex. 6, and the accompanying chart showing infringement allegations regarding the '326 patent, *I.V. v. American*, D.I. 1-12, as Ex. 7.

27. In both *I.V. v. Southwest* and *I.V. v. American*, Intellectual Ventures I accuses Viasat's in-flight connectivity systems of infringement based on "complian[ce] with Wi-Fi 802.11n and 802.11ac protocols." *I.V. v. Southwest*, *supra*, D.I. 1-11 (Ex. 5) at 8; *see, e.g., id.* at 5, 12-64; *I.V. v. American*, *supra*, D.I. 1-12 (Ex. 7) at 9; *see, e.g., id.* at 6, 15-65.

28. But Intellectual Ventures I's allegations of infringement against Viasat's in-flight connectivity systems are incorrect.

29. Intellectual Ventures I's infringement claims in *I.V. v. Southwest* and *I.V. v. American* depend on the IEEE 802.11n standard. Intellectual Ventures I alleges that Viasat's in-

flight connectivity systems practice the IEEE 802.11n standard, *see generally I.V. v. Southwest*, *supra*, D.I. 1-11 (Ex. 5); *I.V. v. American*, *supra*, D.I. 1-12 (Ex. 7), and then states that "[o]n information and belief, IEEE 802.11ac infringes for the same reasons as 802.11n." *I.V. v. Southwest*, *supra*, D.I. 1-11 at 17 (Ex. 5); *I.V. v. American*, *supra*, D.I. 1-12 at 20 (Ex. 7).

30. Intellectual Ventures I's infringement claims cite to and rely on "IEEE Standard 802.11n-2009." *E.g., I.V. v. Southwest*, *supra*, D.I. 1-11 (Ex. 5) at 13, 15, 21, 23, 25, 27, 33, 34, 43, 44, 46, 47, 49, 56, 62; *see generally id.*; *e.g., I.V. v. American*, *supra*, D.I. 1-12 (Ex. 7) at 16, 18, 23, 24, 26, 28, 34, 35, 44, 45, 47, 48, 50, 57, 63; *see generally id.*

31. Intellectual Ventures I alleges that Viasat's in-flight connectivity systems infringe what it calls element "[1.b]" of claim 1 of the '326, which includes the Examiner's amendment: "partially filling the frequency gap between the first channel and the second channel by adding one or more data subcarriers into the frequency gap such that the one or more guard bands are at least partially filled with at least some of the one or more data subcarriers *using full spectral synthesis capability of a fast fourier transform or an inverse fast fourier transform*." *I.V. v. Southwest*, *supra*, D.I. 1-11(Ex. 5) at 41-53; *I.V. v. American*, *supra*, D.I. 1-12 (Ex. 7) at 42-54.

32. But nothing cited by Intellectual Ventures I confirms that IEEE Standard 802.11n-2009 requires or even contemplates using "full spectral synthesis capability of a fast fourier transform or an inverse fast fourier transform" as required by the Examiner's amendment.

33. Intellectual Ventures I acknowledges as much in its infringement claims, stating that "*[o]n information and belief*, the HT PHY uses a 128-point IDFT, usually implemented as an IFFT, to create the transmitted signal across the full 40 MHz signal spectrum. *This process involves a fast fourier transform (FFT).*" *I.V. v. Southwest*, *supra*, D.I. 1-11 (Ex. 5) at 48; *I.V. v. American*, *supra*, D.I. 1-12 (Ex. 7) at 49 (emphasis added).

34. But other portions of the IEEE Standard 802.11n-2009, the document on which Intellectual Ventures I relies, confirm that Intellectual Ventures I's "information and belief" allegation is incorrect, and that implementers of the standard cannot use "full spectral synthesis capability of a fast fourier transform or an inverse fast fourier transform" to send and receive the "one or more data subcarriers" as required by the Examiner's amendment.

35. For example, Intellectual Ventures I alleges that Viasat's in-flight connectivity systems infringe what it calls element "[1.c]" of claim 1 of the '326 by "combining the first channel and the second channel using channel bonding with orthogonal frequency division multiplexing (OFDM)," and supports this allegation by citation to Section 20.3.11.10.3 of IEEE Standard 802.11n-2009, which reads as follows:

**20.3.11.10.3 Transmission in 40 MHz HT format**

For 40 MHz HT transmissions, the signal from transmit chain $i_{TX}$ shall be as shown in Equation (20-59).

$$r^{i_{TX}}_{HT-DATA}(t) = \frac{1}{\sqrt{N_{STS} \cdot N^{Tone}_{HT-DATA}}} \sum_{n=0}^{N_{SYM}-1} w_{T_{SYM}}(t - nT_{SYM})$$

$$\cdot \sum_{k=-N_{SR}}^{N_{SR}} \sum_{i_{STS}=1}^{N_{STS}} ([Q_k]_{i_{TX}, i_{STS}} (\tilde{D}_{k, i_{STS}, n} + p_{n+z} P^k_{(i_{STS}, n)}) \Upsilon_k \quad (20\text{-}59)$$

$$\cdot \exp(j2\pi k\Delta_F(t - nT_{SYM} - T_{GI} - T^{i_{STS}}_{CS})))$$

*I.V. v. Southwest*, supra, D.I. 1-11(Ex. 5) at 55; *I.V. v. American*, supra, D.I. 1-12 (Ex. 7) at 56.

36. Equation (20-59) specifies output from an inverse Fourier transform of the data signal into a signal $r^{itx}_{HT-DATA}(t)$ in continuous time domain, and uses continuous time "$t$" to denote and generate the transmission signal $r^{itx}_{HT-DATA}(t)$.

37. A fast Fourier transform cannot provide output that is continuous in the time domain, and thus cannot provide the "$t$" specified by equation (20-59).

38.     In addition, Section 20.3.11.10.4 of IEEE Standard 802.11n-2009 specifies transmission in MCS 32 format at 40 MHz:

**20.3.11.10.4 Transmission in MCS 32 format**

MCS 32 format provides the lowest transmission rate in 40 MHz. It is used only for one spatial stream and only with BPSK modulation and rate 1/2 coding.

In the MCS 32 format, the signal shall be as shown in Equation (20-60).

$$r^{i_{TX}}_{HT-DATA}(t) = \frac{1}{\sqrt{N^{Tone}_{HT-Duplicate}}} \sum_{n=0}^{N_{SYM}-1} w_{T_{SYM}}(t - nT_{SYM}) \quad (20\text{-}60)$$

$$\cdot \sum_{k=-N_{SR}}^{N_{SR}} (D_{k,n} + p_{n+z}P_k)([Q_{k-32}]_{i_{TX},1} \exp(j2\pi(k-32)\Delta_F(t - nT_{SYM} - T_{GI}))$$

$$+ j[Q_{k+32}]_{i_{TX},1} \exp(j2\pi(k+32)\Delta_F(t - nT_{SYM} - T_{GI})))$$

39.     Equation (20-60) specifies output from an inverse Fourier transform of the data signal into a signal $r^{itx}_{HT\text{-}DATA}(t)$ in continuous time domain, and uses continuous time "$t$" to denote and generate the transmission signal $r^{itx}_{HT\text{-}DATA}(t)$.

40.     A fast Fourier transform cannot provide output that is continuous in the time domain, and thus cannot provide the "$t$" specified by equation (20-60).

41.     Equations (20-59) and (20-60) are the only equations in IEEE Standard 802.11n-2009 showing a signal for a 40 MHz transmission.

42.     Intellectual Ventures I only accuses 40 MHz transmissions of infringement.

43.     IEEE Standard 802.11n-2009, including sections of the standard that Intellectual Ventures I cites to show infringement, actually confirms the opposite: to be "compliant with Wi-Fi 802.11n and 802.11ac protocols" as Intellectual Ventures I alleges, *e.g.*, *I.V. v. Southwest*, *supra*, D.I. 1-11 (Ex. 5) at 8; *I.V. v. American*, *supra*, D.I. 1-12 (Ex. 7) at 9, Viasat's in-flight connectivity systems cannot practice the element of "partially filling the frequency gap between the first channel and the second channel by adding one or more data subcarriers into the

frequency gap such that the one or more guard bands are at least partially filled with at least some of the one or more data subcarriers *using full spectral synthesis capability of a fast fourier transform or an inverse fast fourier transform*."

44. For these and other reasons, Viasat's in-flight connectivity systems do not directly or indirectly infringe any claim of the '326 patent, literally or under the doctrine of equivalents.

45. Viasat has not infringed and does not infringe any claim of the '326 patent either directly, contributorily, or by inducement, literally or under the doctrine of equivalents, including through its making, use, importation into the United States, sale, or offer for sale of the accused in-flight connectivity systems, or any Viasat products.

**VIASAT CANNOT INFRINGE THE '326 BECAUSE ANY CLAIM IS EXHAUSTED**

46. Viasat cannot infringe the '326 patent for another reason: under the doctrine of patent exhaustion, when a licensee sells a product that practices or substantially embodies the patent, any claim of infringement arising from post-sale uses is exhausted through that sale.

47. Regarding the '326 patent, Intellectual Ventures I's allegations of infringement depend on "complian[ce] with Wi-Fi 802.11n and 802.11ac protocols," *e.g.*, *I.V. v. Southwest*, *supra*, D.I. 1-11 (Ex. 5) at 8; *I.V. v. American*, *supra*, D.I. 1-12 (Ex. 7) at 9, and do not accuse any other portion of Viasat's in-flight connectivity systems.

48. In building in-flight connectivity systems, Viasat exclusively uses Wi-Fi base stations, which Intellectual Ventures I accuses of infringement, originally sold by Aruba Networks, LLC.

49. On January 4, 2023, Intellectual Ventures announced it had entered into an intellectual property license agreement with Hewlett Packard Enterprise, the parent company of Aruba Networks, LLC.

50. On information and belief, this agreement included a license to the '326 patent that covers all sales of accused Wi-Fi base stations from Aruba Networks.

51. As a result, each sale of an accused Wi-Fi base station from Aruba Networks was authorized by the patentee, causing application of the patent exhaustion doctrine and preventing Intellectual Ventures I from asserting further patent rights or exclusionary power over that article, exhausting Intellectual Ventures I's right to pursue any infringement claims under the '326 patent.

52. Thus, Viasat's in-flight connectivity systems cannot infringe any claim of the '326 patent because the licensed sale by Aruba Networks, LLC exhausted Intellectual Ventures I's patent rights and extinguished any infringement claims.

**THE '469 PATENT**

53. On January 29, 2008, the United States Patent and Trademark Office issued the '469 patent, entitled "Satellite Distributed High Speed Internet Access." Ex. 2.

54. On September 26, 2024, Intellectual Ventures II acquired the '469 patent from Callahan Cellular L.L.C.

55. The '469 patent "provides rural 'Hotspots'" for use "in areas that experience high volume transient traffic, such as rest areas, restaurants, truck stops, rural hotels, conference centers, motels and state park lodges." Ex. 2 at 1:41-44. Claim 24 recites:

> An Internet Hotspot comprising:
>
> a satellite dish communicating with the Internet via one or more data links with a satellite;
>
> at least one router operatively coupled to the satellite dish;
>
> a subscriber access unit operatively coupled between the satellite dish and the at least one router, the subscriber access unit being capable of authenticating a subscription account associated with a user prior to allowing the user access to the Internet; and

> a web-ready device operatively coupled to the at least one router, the web-read device having a browser application operating thereon for accessing the Internet;
>
> wherein the satellite dish, at least one router and the subscriber access unit are located in a remote location a [sic] experiencing a relatively high volume of transient traffic;
>
> wherein the user may authenticate the subscription account and access the Internet at the remote location by establishing a data connection between the web-ready device and the router.

*Id.* at 8:24-43. The '469 patent thus claims a system in which, among other things, authentication must occur locally, performed by a "subscriber access unit being capable of authenticating a subscription account associated with a user prior to allowing the user access to the Internet," that is "coupled between the satellite dish and the at least one router," and further requiring that the "the satellite dish, at least one router and the subscriber access unit are located in a remote location a [sic] experiencing a relatively high volume of transient traffic." *Id.*

## VIASAT DOES NOT INFRINGE THE '469 PATENT

56. In *I.V. v. Southwest*, Intellectual Ventures II alleges that Southwest infringes the '469 patent by using Viasat's in-flight connectivity systems. *I.V. v. Southwest*, *supra*, D.I. 1 (Ex. 4) ¶¶ 103-117; *id.*, D.I. 1-12 *passim*. For the convenience of the Court, Viasat attaches the chart accompanying the complaint in *I.V. v. Southwest* showing infringement allegations regarding the '469 patent, *I.V. v. Southwest*, D.I. 1-12, as Ex. 8.

57. In *I.V. v. American*, Intellectual Ventures II alleges that American infringes the '469 patent by using Viasat's in-flight connectivity systems. *I.V. v. American*, *supra*, D.I. 1 (Ex. 6) ¶¶ 101-115; *id.*, D.I. 1-13 *passim*. For the convenience of the Court, Viasat attaches the chart accompanying the complaint in *I.V. v. American* showing infringement allegations regarding the '326 patent, *I.V. v. American*, D.I. 1-13, as Ex. 9.

58. In both *I.V. v. Southwest* and *I.V. v. American*, Intellectual Ventures II accuses Viasat's in-flight connectivity systems of infringement based on, among other things, the

presence of "a subscriber access unit operatively coupled between the satellite dish and the at least one router, the subscriber access unit being capable of authenticating a subscription account associated with a user prior to allowing the user access to the Internet." *I.V. v. Southwest*, *supra*, D.I. 1-12 (Ex. 8) at 14; *see id.* at 14-17; *I.V. v. American*, *supra*, D.I. 1-13 (Ex. 9) at 16; *see id.* at 16-22. Intellectual Ventures II makes this allegation "[o]n information and belief." *I.V. v. Southwest*, *supra*, D.I. 1-12 (Ex. 8) at 14; *I.V. v. American*, *supra*, D.I. 1-13 (Ex. 9) at 16.

59. In *I.V. v. Southwest*, Intellectual Ventures II claims that, "[o]n information and belief, Southwest passengers authenticate themselves on the SouthwestWiFi.com web portal to access in-flight Wi-Fi using on-board server(s). The authentication completes when the user enters their login credentials on the portal." *I.V. v. Southwest*, *supra*, D.I. 1-12 (Ex. 8) at 16. In *I.V. v. American*, Intellectual Ventures II claims that, "[o]n information and belief, American passengers authenticate themselves on the american.com web portal to access in-flight Wi-Fi for example through the subscriber access unit. The authentication completes when the user enters their login credentials on the portal." *I.V. v. American*, *supra*, D.I. 1-13 (Ex. 9) at 19.

60. But Intellectual Ventures II's allegations of infringement against Viasat's in-flight connectivity systems are incorrect.

61. Viasat's in-flight connectivity systems are not "capable of authenticating a subscription account" "using on-board server(s)" as Intellectual Ventures II alleges. To the contrary, any "authenticat[ion]" of a "subscription account" is handled by terrestrial systems.

62. Viasat's in-flight connectivity systems thus do not include "a subscriber access unit operatively coupled between the satellite dish and the at least one router, the subscriber access unit being capable of authenticating a subscription account associated with a user prior to allowing the user access to the Internet," and do not comprise a system "wherein the satellite

dish, at least one router and the subscriber access unit are located in a remote location a [sic] experiencing a relatively high volume of transient traffic." Ex. 2 at 8:28-39.

63. For these and other reasons, Viasat's in-flight connectivity systems do not directly or indirectly infringe any claim of the '469 patent, literally or under the doctrine of equivalents.

64. Viasat has not infringed and does not infringe any claim of the '469 patent either directly, contributorily, or by inducement, literally or under the doctrine of equivalents, including through its making, use, importation into the United States, sale, or offer for sale of the accused in-flight connectivity systems, or any Viasat products.

## COUNT I

*(Declaration of Non-Infringement of the '326 Patent)*

65. Viasat restates and incorporates by reference the allegations in paragraph 1 through 64 of this Complaint as if fully set forth herein.

66. Intellectual Ventures I claims to own all right, title, and interest in the '326 patent.

67. Viasat and its products, including Viasat's in-flight connectivity systems, do not and did not directly or indirectly infringe any claim of the '326 patent, literally or under the doctrine of equivalents.

68. An actual, substantial, immediate, and continuing controversy exists between Viasat and Intellectual Ventures I regarding whether Viasat infringes or has infringed the '326 patent. A judicial declaration is necessary and appropriate to determine the parties' rights regarding the '326 patent.

## COUNT II

*(Declaration of Non-Infringement of the '326 Patent Based on Exhaustion)*

69. Viasat restates and incorporates by reference the allegations in paragraph 1 through 64 of this Complaint as if fully set forth herein.

70. Intellectual Ventures I claims to own all right, title, and interest in the '326 patent.

71. Intellectual Ventures I's infringement allegations against Viasat's in-flight connectivity systems are barred by the doctrine of patent exhaustion.

72. Viasat and its products, including Viasat's in-flight connectivity systems, do not and did not directly or indirectly infringe any claim of the '326 patent, literally or under the doctrine of equivalents.

73. An actual, substantial, immediate, and continuing controversy exists between Viasat and Intellectual Ventures I regarding whether Viasat infringes or has infringed the '326 patent. A judicial declaration is necessary and appropriate to determine the parties' rights regarding the '326 patent.

## COUNT III

*(Declaration of Non-Infringement of the '469 Patent)*

74. Viasat restates and incorporates by reference the allegations in paragraph 1 through 64 of this Complaint as if fully set forth herein.

75. Intellectual Ventures II claims to own all right, title, and interest in the '469 patent.

76. Viasat and its products, including Viasat's in-flight connectivity systems, do not and did not directly or indirectly infringe any claim of the '469 patent, literally or under the doctrine of equivalents.

77. An actual, substantial, immediate, and continuing controversy exists between Viasat and Intellectual Ventures II regarding whether Viasat infringes or has infringed the '469 patent. A judicial declaration is necessary and appropriate to determine the parties' rights regarding the '469 patent.

## PRAYER FOR RELIEF

WHEREFORE, Viasat prays for judgment and relief as follows:

  A.  A declaration that Viasat does not and did not infringe, directly or indirectly, literally or under the doctrine of equivalents, any claim of the '326 patent;

  B.  A declaration that Intellectual Ventures I's allegations of infringement of the '326 patent are barred by the doctrine of patent exhaustion;

  C.  A declaration that Viasat does not and did not infringe, directly or indirectly, literally or under the doctrine of equivalents, any claim of the '469 patent;

  D.  Judgment in favor of Viasat and against Intellectual Ventures I and Intellectual Ventures II on Viasat's claims;

  E.  Finding that this an exceptional case under 35 U.S.C. § 285;

  F.  Awarding Viasat its costs and attorneys' fees in connection with this action; and

  G.  Such further and additional relief as the Court deems just and proper.

## JURY DEMAND

Viasat demands a jury trial on all issues and claims so triable.

  Respectfully submitted,

  /s/ Karen E. Keller
  Karen E. Keller (No. 4489)

| OF COUNSEL: | SHAW KELLER LLP |
|---|---|
| Matthew S. Warren | I.M. Pei Building |
| Erika H. Warren | 1105 North Market Street, 12th Floor |
| Madeline A. Woodall | Wilmington, DE 19801 |
| WARREN KASH WARREN LLP | (302) 298-0700 |
| 2261 Market Street, No. 606 | kkeller@shawkeller.com |
| San Francisco, CA, 94114 | *Attorneys for Plaintiff* |
| (415) 895-2940 | |

Dated: January 14, 2025