IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | |
|---|---|
| INTELLECTUAL VENTURES I, LLC and INTELLECTUAL VENTURES II LLC, <br><br>*Plaintiffs*, <br><br>v. <br><br>SOUTHWEST AIRLINES CO., <br><br>*Defendant.* | Civil Action No. 7:24-cv-00277-ADA <br><br> **JURY TRIAL DEMANDED** |

**DEFENDANT SOUTHWEST AIRLINES CO.'S
REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

**TABLE OF CONTENTS**

I.  INVALIDTY UNDER § 101. ............................................................................................. 1

    A.  Count I: The '844 Patent Claims Nothing More Than an Abstract Idea for Organizing and Storing Data. ................................................................................. 1

        1.  *Alice* Step One: The Claims Are Directed to Organizing and Storing Data. ................................................................................................. 1

        2.  *Alice* Step Two: Nothing Recited Saves the Claims From Abstraction. ............................................................................................... 4

    B.  Count VI: The '582 Patent Claims a Basic Scheduling Concept Implemented Using Known Parallel Processing Techniques. ............................... 5

        1.  *Alice* Step One: The Claims Are Directed to First Come, First Served Processing of Rote Tasks. .................................................................. 5

        2.  *Alice* Step Two: No Element or Combination Offers "Something More" That Is Patent Eligible. ....................................................................... 6

II. DIRECT INFRINGEMENT ................................................................................................ 7

    A.  Counts I-III and VI: The Complaint Does Not Adequately Allege Infringement. ............................................................................................................ 7

    B.  Count I: Plaintiff's Defective Theory Warrants Dismissal Now. .......................... 10

## TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Affinity Labs of Tex., LLC v. DIRECTV, LLC*,
  838 F.3d 1253 (Fed. Cir. 2016) ................................................................................................ 1, 5

*Affinity Labs of Tex., LLC v. Toyota Motor of N. Am.*,
  2014 WL 2892285 (W.D. Tex. May 12, 2014) ............................................................................. 7

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
  841 F.3d 1288 (Fed. Cir. 2016) ..................................................................................................... 4

*Appistry, Inc. v. Amazon.com, Inc.*,
  2015 WL 4210890 (W.D. Wash. July 9, 2015) ......................................................................... 6, 7

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018) ............................................................................................. 2, 4, 7

*BioMérieux, S.A. v. Hologic, Inc.*,
  2018 WL 4603267 ........................................................................................................................ 9

*BSG Tech LLC v. Buyseasons, Inc.*,
  899 F.3d 1281 (Fed. Cir. 2018) ............................................................................................. 2, 4, 5

*Celanese Int'l Corp. v. Anhui Jinhe Indus. Co.*,
  2021 WL 7209494 (D. Del. Dec. 10, 2021) .................................................................................. 9

*ChargePoint, Inc. v. SemaConnect, Inc.*,
  920 F.3d 759 (Fed. Cir. 2019) ....................................................................................................... 2

*Content Extraction & Transmission LLC v. Wells Fargo Bank*,
  776 F.3d 1343 (Fed. Cir. 2014) ..................................................................................................... 1

*Contiguity, LLC v. Conduent Bus. Servs., LLC*,
  2024 WL 252068 (W.D. Tex. Jan. 22, 2024) .............................................................................. 10

*Customedia Techs., LLC v. Dish Network Corp.*,
  951 F.3d 1359 (Fed. Cir. 2020) ................................................................................................. 2, 7

*Electric Power Group, LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016) ..................................................................................................... 2

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016) ..................................................................................................... 3

*Enpat, Inc. v. Tenrox, Inc.*,
  2015 WL 541673 (M.D. Fla. Feb. 10, 2015) ................................................................................ 6

*Genetic Techs. Ltd. v. Merial L.L.C.*,
    818 F.3d 1369 (Fed. Cir. 2016)..................................................................................................6

*Intell. Ventures I LLC v. Symantec Corp.*,
    838 F.3d 1307 (Fed. Cir. 2016)..............................................................................................3, 5

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
    850 F.3d 1332 (Fed. Cir. 2017)..................................................................................................1

*Intellectual Ventures I LLC v. Erie Indem. Co.*,
    850 F.3d 1315 (Fed. Cir. 2017)..................................................................................................1

*JVC Kenwood Corp. v. Nero, Inc.*,
    797 F.3d 1039 (Fed. Cir. 2015)............................................................................................9, 10

*Rally AG LLC v. Apple, Inc.*,
    2024 WL 4836540 (D. Del. Nov. 20, 2024) ..............................................................................9

*Raytheon Co. v. Cray, Inc.*,
    2017 WL 1362700 (E.D. Tex. Mar. 13, 2017) ..........................................................................9

*Sanderling Mgmt. Ltd. v. Snap Inc.*,
    65 F.4th 698 (Fed. Cir. 2023) ....................................................................................................1

*SAP Am., Inc. v. InvestPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018)..................................................................................................7

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
    873 F.3d 905 (Fed. Cir. 2017)....................................................................................................4

*In re TLI Commc'ns LLC Patent Litig.*,
    823 F.3d 607 (Fed. Cir. 2016)................................................................................................1, 4

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017)..................................................................................................4

*Visual Memory, LLC v. NVIDIA Corp.*,
    867 F.3d 1253 (Fed. Cir. 2017)..................................................................................................3

*WirelessWerx IP LLC v. OnStar, LLC*,
    2024 WL 1607018 (E.D. Mich. Apr. 12, 2024).........................................................................8

*Yodlee, Inc. v. Plaid Techs. Inc.*,
    2016 WL 2982503 (D. Del. May 23, 2016).........................................................................6, 7

**Other Authorities**

FED. R. CIV. P. Rule 12 ......................................................................................................................1

I.  **INVALIDTY UNDER § 101.**

In evaluating Counts I and VI, the Court should treat claim 7 of the '844 Patent and claim 1 of the '582 Patent as representative because they were charted as such in the Complaint, Southwest asserted in its Rule 12 motion that they were representative, and IV did not dispute in its response that those claims were representative. *Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 702 (Fed. Cir. 2023); *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1256 n.1 (Fed. Cir. 2016).

   A.  **Count I: The '844 Patent Claims Nothing More Than an Abstract Idea for Organizing and Storing Data.**

   1.  *Alice* **Step One: The Claims Are Directed to Organizing and Storing Data.**

*First*, IV tries to import eligibility by focusing on the *type* of data organized (e.g., a root/leaf image). But when "stripped of excess verbiage," *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1339 (Fed. Cir. 2017), claim 7 merely requires storing one type of data (a "root image") in one place, another type of data (a "leaf image") in a second place, and other data in a cache. *See* Dkt#1-1 at 11:29-40. Boiled down, claim 7 is analogous to claims for organizing and storing information routinely held abstract, regardless of the operating environment, type of data, or conventional hardware recited in the claim. *See, e.g., In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016) ("*TLI*") (claim related to creating and storing data images based on "classification" of the data); *Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (claim related to receiving and storing data documents in specified location based on recited characteristics of the data).

*Second*, although IV cites Fig. 3A as embodying the specifics of the claimed method, claim 7 fails to recite half the steps in Fig. 3A (e.g., items 324–345).[1] Such *unclaimed* steps cannot confer

---

[1] IV also argues that the '844 Patent solves prior art problems relating to "redundancies in the operations of the compute nodes[.]" Dkt#28 at 6. However, those benefits are tied to indexing—an abstract idea. *See Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1328–29 (Fed. Cir.

1

eligibility. And the high-level functional language used in claim 7—"providing," "storing," and "caching"—includes no specifics on *how* to accomplish the recited functions. *See Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1351 (Fed. Cir. 2016) ("The claims, defining a desirable information-based result and not limited to inventive means of achieving the result, fail under § 101."). Absent concrete technical details necessary to provide specific improvements, claim 7 provides nothing more than an abstract idea for organizing and storing data. *See Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1363, 1365 (Fed. Cir. 2020). In that regard, claim 7 recites no specific technical details to improve computer functionality, such as *how* to merge boot images on the fly, an improved protocol or algorithm for caching data, or a new hardware configuration. The specification likewise teaches no specific root image caching technique. Instead, the patent describes the *expected* benefits that should result from employing a known image partitioning strategy (root/leaf) and known caching concepts, such as the LRU caching technique from Fig. 4. *See BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1288 (Fed. Cir. 2018) ("These benefits, however, are not improvements to database functionality. Instead, they are benefits that flow from performing an abstract idea in conjunction with a well-known database structure.").

*Third*, although IV contends that the claimed root-leaf structure and caching of data "allows for" improved processing speeds, Dkt#28 at 2, 4-6, the patent acknowledges that the claimed root-leaf storage and caching techniques *were already known*. Dkt#1-1 at 2:6-11, 2:14-25, 6:38-7:17, p.2 (citing *Nguyen, T.M., et al.*, "Branching Store File System," U.S. Appl. No. 11/026/622 filed Dec.

---

2017); *BSG Tech*, 899 F.3d at 1286, 1291. Moreover, "indexing" is *not* reflected in claim 7, *see* Dkt#28 at 4-5; Dkt#1-1 at 2:1-13, and cannot be relied upon as a technical improvement. *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369–70 (Fed. Cir. 2018) ("Because claims 1–3 and 9 do not capture the purportedly inventive concepts, we hold that claims 1–3 and 9 are ineligible."); *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 769 (Fed. Cir. 2019) ("[T]he specification cannot be used to import details from the specification if those details are not claimed.").

2

30, 2004). According to the patent, conventional branching file systems used root and leaf images, allowing each compute node to "run[] its own unique and cohesive instance of the application environment" with the known benefit of "creation of boot images on the fly without severely diminishing bring-up time." *Id.* at 2:14–25. The patent further admits caching techniques and resulting speed improvements were well known and predictable (*id.* at 6:37–7:16), such that improved "[b]ring up time, and access time in general," was the expected result of "caching commonly accessed portions of the root image." *Id.* at 2:59–61. The purported benefits derived from admittedly conventional systems and techniques cannot confer patent eligibility. *See Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1319 (Fed. Cir. 2016) ("Performing virus screening was a long prevalent practice in the field of computers, and *as the patent admits*, performed by many computer users.").

*Fourth*, IV's reliance on *Enfish* and *Virtual Memory* is misplaced. Dkt#28 at 4, 6. The database structure in *Enfish* fundamentally changed how data was stored by introducing a self-referential table model. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1330, 1332 1335–36 (Fed. Cir. 2016). Claim 7 does not introduce a new data structure—root/leaf images were admittedly in the prior art, as was cache memory. Similarly, *Visual Memory* involved a memory system that, unlike the prior art, adjusted cache allocation based on processor type, directly improving hardware functionality. *Visual Memory, LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1259 (Fed. Cir. 2017). Claim 7 does not change how hardware operates; it merely recites where to store data. The *how* part matters. The *Virtual Memory* patent included "a microfiche appendix having a combined total of 263 frames of computer code," detailing specifics for *how* to "configure a programmable operational characteristic of cache memory … based on the type of processor connected to the memory system," and the patent explained details for "*how* to implement such a memory system." *Id.* at 1261. Claim 7 merely

3

recites using existing partitioning and caching principles to cache parts of a root image without "how to" details that were critical to eligibility in those other cases. *See BSG Tech LLC*, 899 F.3d at 1288 (rejecting asserted "improve[ment of] the quality of information added to the database and the organization of information in the database" by "allow[ing] users to quickly and efficiently access . . . records").

### 2. *Alice* Step Two: Nothing Recited Saves the Claims From Abstraction.

IV argues that there is a fact issue under *Berkheimer* on whether the claim elements were routine and conventional. Dkt#28 at 7-8. But *Berkheimer* does not apply where the patent itself acknowledges the claimed elements were conventional. *See TLI*, 832 F.3d at 612 (components recited in the claims were conventional where "specification confirms" that it "is known" the "telephone unit" "behave[d] as expected"); *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 912 (Fed. Cir. 2017) (same). IV concedes that (1) claim 7 only requires conventional computer components operating in their ordinary capacity; (2) root-leaf images and caching were well known in the prior art—a point that the specification admits with abundant clarity; and (3) the patent does not teach or provide any specific algorithms or methods for root image caching.[2] The claims thus lack any inventive concept under *Alice* Step Two. *See Erie Indemn.*, 850 F.3d at 1328–1329 (rejecting claimed improvement of "computer databases function" where "the claims do not sufficiently recite *how* the inclusion of [the asserted search architecture] leads to an improvement in computer database technology through some non-conventional and non-generic arrangement of

---

[2] IV analogizes the claimed invention to *Amdocs*, which involved computer components "purposefully arrange[d]" to operate "in an unconventional manner to achieve an improvement in computer functionality." *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1300–01 (Fed. Cir. 2016). The '844 Patent requires only "conventional computer and network components operating according to their ordinary functions." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339 (Fed. Cir. 2017).

known, conventional pieces"); *see also BSG Tech*, 899 F.3d at 1290–91 ("If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea.").

**B. Count VI: The '582 Patent Claims a Basic Scheduling Concept Implemented Using Known Parallel Processing Techniques.**

**1.** *Alice* **Step One: The Claims Are Directed to First Come, First Served Processing of Rote Tasks.**

IV admits the '582 Patent concerns parallel processing and task scheduling but argues that (1) claim 1 is "directed to an improvement in data processing through the use of parallelization"; and (2) eliminating centralized load tracking is an "improvement." Dkt#28 at 9-10.

*First*, though IV argues the invention "allows for the use of multiple computers, including 'heterogenous' computers, to optimize execution of processes," Dkt#28 at 10, the patent concedes that parallel execution and distributed processing were foundational *prior art* concepts, explaining that in "contemporary environments, much can be gained by the parallelization of some processes and their distributed execution." Dkt#1-6 at 1:33-38. Thus, the advantages expected from parallelization and distributed execution are not improvements offered by *this* patent. *See Symantec Corp.*, 838 F.3d at 1319.

*Second*, the purported advance over the prior art is replacing a conventional "control process that uses load information to distribute the load between processors" with a control process that distributes "parts of the load on a first-come/first-served basis."[3] Dkt#13-2 at 2. This scheduling

---

[3] IV also argues "Southwest['s contention regarding the '582 Patent's 'first available' assignment technique] conflates novelty and obviousness with patent eligibility." Dkt#28 at 11 n.4. Southwest's argument is directly relevant to the "directed to" inquiry. *See Affinity Labs*, 838 F.3d at 1257 ("The 'abstract idea' step of the inquiry calls upon us to look at the 'focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded subject matter.");

5

adjustment is inherently conceptual, not technological. During prosecution, the applicant explained the idea using a metaphor: a traffic light replaced by a four-way stop. Dkt#13-2 at 2. That metaphor and explanation confirms that the purported improvement is an abstract idea. *See Yodlee, Inc. v. Plaid Techs. Inc.*, 2016 WL 2982503, at *18 (D. Del. May 23, 2016) ("identifying sub-task within a larger task, managing completion of those sub-tasks, and communicating the results to the client" held abstract), *report and recommendation adopted*, 2017 WL 385039 (D. Del. Jan. 27, 2017); *Appistry, Inc. v. Amazon.com, Inc.*, 2015 WL 4210890, at *2 (W.D. Wash. July 9, 2015) (the idea of "using a network of multiple actors to efficiently and reliably process information and/or complete a task by breaking down the job into small pieces, each handled by a different actor organized within an internal hierarchy" held abstract), *aff'd sub nom. Appistry, LLC v. Amazon.com, Inc.*, 676 Fed. Appx. 1007 (Fed. Cir. 2017); *Enpat, Inc. v. Tenrox, Inc.*, 2015 WL 541673, at *1, *3, *5 (M.D. Fla. Feb. 10, 2015) (project management and resource leveling ideas held abstract).

   2.   *Alice* **Step Two: No Element or Combination Offers "Something More" That Is Patent Eligible.**

Rather than identifying any technology feature that makes claim 1 non-abstract, IV parrots the specification's generic statements that parallelization improves execution speed and load balancing. Dkt#28 at 12. But these are merely the benefits of parallel computing. *See Appistry*, 2015 WL 4210890, at *4 ("That computers are capable of dividing a task between two or more linked computers in order to complete the task more quickly and more efficiently is similarly basic."). Moreover, IV does not dispute that the '582 Patent relies solely on generic processors and memory, recites standard task scheduling steps, and discloses no new architecture, algorithm, or mechanism. "[The Federal Circuit] has ruled many times that 'such invocations of computers and networks

---

*Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1375–76 (Fed. Cir. 2016) (inquiring into "the focus of the claimed advance over the prior art").

[including parallel processing] that are not even arguably inventive are insufficient to pass the test of an inventive concept in the application of an abstract idea[.]" *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1170 (Fed. Cir. 2018); *see also Customedia*, 951 F.3d at 1366 ("invocation of already-available computers ... amounts to a recitation of what is well-understood, routine, and conventional."). Using well-known prior art hardware to perform an abstract scheduling idea is not inventive. *See Appistry*, 2015 WL 4210890, at *4 ("But the actual systems and methods claimed—through which efficiency and reliability are achieved—are well understood, routine, and purely conventional, and do not supply an inventive concept separate from the underlying abstract idea [of task management]."); *Yodlee*, 2016 WL 2982503, at *20 (invention directed to task allocation "does not require anything other than the use of 'conventional' software-based technology, such that it does not invoke the requisite inventive concept").

IV again invokes *Berkheimer* to assert that a fact issue exists about conventionality of the '582 Patent's techniques, Dkt#28 at 13, but the patent itself concedes that parallel execution and load balancing were well-known computing techniques at the time of filing. Dkt#1-6 at 1:11-3; 1:29-38. IV's attorney argument cannot create a factual dispute in the face of admissions in the patent itself. *See SAP Am.*, 898 F.3d at 1170.

## II.   DIRECT INFRINGEMENT

### A.   Counts I-III and VI: The Complaint Does Not Adequately Allege Infringement.[4]

IV contends it provides fair notice of Southwest's products and services that allegedly use the accused third-party technologies. Dkt#28 at 14. Not so. IV has accused *unidentified* Southwest

---

[4] As to specific intent for induced infringement, IV argues "Southwest offers products and services to its customers and third parties and/or employees that are associated with backend functionality' that hosts the accused technologies." Dkt#28 at 19. However, IV fails to allege any affirmative steps Southwest took to encourage another party to infringe. *See Affinity Labs of Tex., LLC v. Toyota Motor of N. Am.*, 2014 WL 2892285, at *7–8 (W.D. Tex. May 12, 2014).

7

products or services covering Southwest's entire business as "Accused Products and Services," *e.g.*, Dkt#1 ¶39, and provided claim charts about *third-party* technologies; that is insufficient to notify Southwest of what *Southwest* product or service is infringing these patents. *See WirelessWerx IP LLC v. OnStar, LLC*, 2024 WL 1607018, at *10–11 (E.D. Mich. Apr. 12, 2024). IV argues that requiring more would "place[] a burden on IV well beyond its pleadings requirements" because: (1) IV allegedly provided "proof of Southwest's use of the accused technologies"; and (2) Southwest does not make information related to its cloud technologies public. *See* Dkt#28 at 14-16.

IV's complaint fails because it does not identify the *specific* accused Southwest products or services that allegedly infringe *or* demonstrate any *unauthorized* use of accused third-party programs. Critically, IV admits that *at least some upstream cloud service providers are licensed, see* Dkt#1-8, 1-9, 1-10, 1-13, 1-14 at 2 n.1, but does not disclose which cloud service providers are licensed. IV says it is not "accus[ing] public clouds of Southwest if those services are provided by a cloud provider with a license to [IV's] patents that covers Southwest's activities," *id.*, thus conceding that Southwest's public cloud uses may be licensed. Yet, IV asserts its infringement claims are plausible based on the flimsy ground that it "identified Southwest *engineers who work on each respective technology*." *See* Dkt#28 at 14, 16 (emphasis in original). A Southwest employee's familiarity with accused open-source software says nothing about whether Southwest's use, if any exists, is unauthorized. Similarly, IV asserts: "Southwest has stated that it is investing in cloud technology and has 'moved about 50% of its technology' to the [public] cloud and has indicated cloud migration is one of its areas of focus for 2024 and beyond." *Id.* (brackets in original). This statement too (notwithstanding the added text) does not identify a Southwest product or service or show use of any accused third party technologies, much less use of open-source technologies that are not covered by licenses with cloud providers.

IV's lack of discovery does not change its pleading obligations, as shown by its misplaced reliance on *K-Tech*, *MaxLinear*, and other authorities.[5] In *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, defendants were bound by a regulatory scheme to broadcast digital television signals in a certain way, produced output signals consistent with industry standards, and allegedly "operate[d] in secrecy." *See* 714 F.3d 1277, 1281–82, 1286 (Fed. Cir. 2013). The Federal Circuit, relying on Form 18, concluded patentee provided sufficient notice that defendants' specific television broadcast features must be infringing its patent to allow such a broadcast. *See id.* 1285–87. In *Bell Semiconductor, LLC v. MaxLinear, Inc.*, plaintiff alleged defendant infringed by using the claimed "circuit design methodologies" to design defendant's "XR9240 chips," which reflected plaintiff's claimed method of producing semiconductor chips. *See* 2023 WL 174973, at *1, *5 (S.D. Cal. Jan. 12, 2023). No such allegation is made here.

The direct infringement–license analysis in *JVC Kenwood* is instructive. There, JVC (patentee) alleged that end users of Nero's software must necessarily infringe its patents when used with standards-compliant DVD or Blu-ray discs. *JVC Kenwood Corp. v. Nero, Inc.*, 797 F.3d 1039, 1043–45 (Fed. Cir. 2015). The asserted patents however were included in the licensing pools for DVD and Blu-ray disc products. *Id.* The district court held, and the Federal Circuit affirmed, that "*without specific allegations* and evidence *showing use of unlicensed optical discs*, Nero has established a complete defense to all of JVC's allegations of infringement under the Patents." *Id.* at

---

[5] IV's other cases reinforce that IV must identify a specific accused product or service. *See Celanese Int'l Corp. v. Anhui Jinhe Indus. Co.*, 2021 WL 7209494, *2 (D. Del. Dec. 10, 2021) ("high-purity acesulfame potassium composition"); *BioMérieux, S.A. v. Hologic, Inc.*, 2018 WL 4603267, *1–2 ("Procleix tests and Aptima tests"); *Raytheon Co. v. Cray, Inc.*, 2017 WL 1362700, at *1 (E.D. Tex. Mar. 13, 2017) ("XC40 supercomputer"); *DermaFocus* LLC v. Ulthera, Inc., 201 F. Supp. 3d 465, 467 (D. Del. 2016) ("Ulthera System" or "Ultherapy"); *Rally AG LLC v. Apple, Inc.*, 2024 WL 4836540, at *3 (D. Del. Nov. 20, 2024) ("all Apple devices, including iPhones and iPads, that have cloaking and decloaking capabilities," i.e., "Hide-My-Email" feature).

1045. In doing so, the Federal Circuit *rejected* "JVC's argument that it was not its burden to make such a showing." *Id.*

### B. Count I: Plaintiff's Defective Theory Warrants Dismissal Now.

On the '844 Patent asserted in Count I, IV alleges and admits that "Docker includes a writable per runnable container layer for new data such as new *files* and [] a copy on write strategy" indicating "the *file* is copied into that layer and modified." *See* Dkt#1-8 at 21, 24, 26. Claim 7, however, requires *block level* storage and precludes a leaf image from including unchanged blocks from or data blocks previously contained in a root image. Dkt#1-1 at 5:49-58, 7:59-62, 9:39-44, 11:31-38. Copying an entire *file* (which comprises all blocks/data blocks, including those unchanged) is thus fundamentally inconsistent with the leaf image limitation. *See id.* Although IV requests a delayed ruling pending claim construction concerning its defective infringement theory, IV "fails to identify any alternative plausible construction of the [leaf image] limitations," and the Court should not "ignore that [IV's] allegations of infringement rely on an impermissible construction of the ['844] Patent's claims to which [IV] has no meaningful response." *Contiguity, LLC v. Conduent Bus. Servs., LLC*, 2024 WL 252068, at *3 (W.D. Tex. Jan. 22, 2024). As in *Bot M8 LLC v. Sony Corp. of Am.* and *Contiguity*, IV "plead[s] itself out of court" by "pleading facts that are inconsistent with the requirements of its claims." 4 F.4th 1342, 1353–54; 2024 WL 252068, at *4.

\* \* \*

Southwest respectfully requests that the Court grant its Rule 12(b)(6) motion to dismiss, finding that (1) the representative claims of the '844 and '582 Patents in Counts I and VI are invalid under § 101 and *Alice*; and (2) the Complaint fails to adequately allege infringement of the software patents in Counts I–III and VI because it does not identify a specific infringing product, service, or other use by Southwest.

Dated: April 2, 2025

Respectfully submitted,

*/s/ S. Wallace Dunwoody*
Michael C. Wilson
Texas Bar No. 21704590
mwilson@munckwilson.com
S. Wallace Dunwoody
Texas Bar No. 24040838
wdunwoody@munckwilson.com
**MUNCK WILSON MANDALA, LLP**
2000 McKinney Avenue, Suite 1900
Dallas, Texas 75201
(972) 628-3600
(972) 628-3616 fax

David G. Henry
Texas Bar. No. 09479355
dhenry@munckwilson.com
**MUNCK WILSON MANDALA, LLP**
510 Austin Avenue, Suite 3100
Waco, Texas 76701
(254) 362-2300
(254) 362-2304 fax

Tri T. Truong
Texas Bar No. 24102969
ttruong@munckwilson.com
**MUNCK WILSON MANDALA, LLP**
807 Las Cimas Parkway, Suite 300
Austin, Texas 78756
737-201-1600
737-201-1601 fax

*Attorneys for Southwest Airlines Co.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 2, 2025, the foregoing document has been served on all counsel of record via the Court's CM/ECF system.

*/s/ S. Wallace Dunwoody*
S. Wallace Dunwoody

7023932