IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I, LLC and INTELLECTUAL VENTURES II LLC, | § § § | |
| Plaintiffs, | § § | Civil Action No. 7:24-cv-00277-ADA |
| v. | § § | PUBLIC VERSION |
| SOUTHWEST AIRLINES CO., | § § | JURY TRIAL DEMANDED |
| Defendant. | § § | |

**DEFENDANT SOUTHWEST AIRLINES CO.'S SUPPLEMENTAL
BRIEF IN SUPPORT OF ITS MOTION TO SEVER AND STAY**

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1
II. SUPPLEMENTAL BACKGROUND ................................................................................. 1
    A. I.V. Accuses the Manufacturers of Infringement ......................................................... 2
    B. Discovery Confirmed the Manufacturers Provide Complete Accused Systems ........... 2
    C. Viasat and Anuvu Are Indemnifying Southwest Against I.V.'s Claims ....................... 3
    D. Southwest's Limited Use of Panasonic Systems ........................................................... 4
III. ARGUMENT ..................................................................................................................... 4
    A. Discovery Confirms the Customer-Suit Exception Applies .......................................... 4
        1. Southwest is a "Mere User or Reseller" of the Accused Systems ............................ 4
        2. Southwest Agrees to be Bound by the Delaware Actions ......................................... 5
        3. Viasat and Anuvu Are the Sole Source of Their Accused Systems .......................... 6
    B. The Court Should Also Grant Southwest's Motion Under the Traditional Factors ................................................................................................................................ 7
IV. CONCLUSION .................................................................................................................. 7

# TABLE OF AUTHORITIES

**Cases**                                                                                                       **Page(s)**

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*,
   876 F.3d 1350 (Fed. Cir. 2017)..................................................................................6, 7

*Flygrip, Inc. v. Walmart Inc.*,
   No. 21-1082, 2022 WL 2373714 (W.D. Tex. June 29, 2022) ...................................6

*In re Google Inc.*,
   588 F. App'x 988 (Fed. Cir. 2014) ............................................................................5

*GreatGigz Sols., LLC v. Costco Wholesale Corp.*,
   No. 21-807, 2022 WL 1037114 (W.D. Tex. Apr. 6, 2022) ....................................5, 7

*Kirsch Rsch. & Dev., LLC v. Bluelinx Corp.*,
   No. 20-316, 2021 WL 4555803 (W.D. Tex. Oct. 4, 2021).........................................6

*In re Nintendo of Am., Inc.*,
   756 F.3d 1363 (Fed. Cir. 2014)..................................................................................1

*Ortiz & Assocs. Consulting, LLC v. VIZIO, Inc.*,
   No. 23-791, 2023 WL 7184042 (N.D. Tex. Nov. 1, 2023).........................................7

*Topia Tech., Inc. v. Dropbox, Inc.*,
   No. 21-1373, 2022 WL 18109619 (W.D. Tex. Dec. 29, 2022) .................................5

*VLSI Tech. LLC v. Intel Corp.*,
   No. 1:19-CV-977-ADA, 2021 WL 2773013 (W.D. Tex. Apr. 12, 2021) .................6

**Statutes**

35 U.S.C. § 286..................................................................................................................4, 6

35 U.S.C. § 287.....................................................................................................................6

## I. INTRODUCTION

Discovery into Southwest's motion only confirmed that the Court should sever and stay I.V.'s claims against Viasat and Anuvu systems. Among other things, discovery showed:

- Viasat and Anuvu provide Southwest the complete systems—all of the hardware and all of the software—accused of infringement of the '326 and '469 patents;

- Southwest does not design, manufacture, control, or modify the accused functionality and indeed does not even have possession of the source code;

- Southwest relies fully on Viasat and Anuvu for operation of the accused in-flight connectivity systems; and

- Viasat and Anuvu have agreed to indemnify Southwest against allegations of infringement of the '326 and '469 patents.

Tellingly, although I.V. previously argued at length that Southwest could not be a "mere reseller" because of the in-flight customer portal element of the '469 patent, I.V.'s supplemental brief abandons that argument. And for good reason: discovery confirmed that Viasat and Anuvu provide the customer portal to Southwest, which does not even have access to its software code. Instead, I.V. focuses on legacy systems for which it cannot recover in this action, because it has not alleged that it and its licensees complied with the marking statute.

Without evidence to support its position, I.V. struggles to inject uncertainty into what should be a routine application of the customer-suit and stay factors, which support severing and staying I.V.'s claims against Southwest while the manufacturer actions proceed in Delaware. *In re Nintendo of Am., Inc.,* 756 F.3d 1363, 1365 (Fed. Cir. 2014). I.V.'s supplemental opposition, like its original, cannot overcome the facts and law. The Court should grant Southwest's motion.

## II. SUPPLEMENTAL BACKGROUND

The procedural history and law at hand are set forth in detail in the parties' briefing. *See* Dkts. 17, 18, 20, 46. Specifically, Southwest contracts with third-party suppliers to design, develop and

1

provide the entirety of the accused in-flight connectivity systems. Those third-party vendors have filed declaratory judgment actions to protect Southwest.

### A. I.V. Accuses the Manufacturers of Infringement

On June 12, I.V. served its infringement contentions in the Viasat declaratory judgment action. *See* Ex. 1. They confirm that I.V. alleges infringement of the '326 and '469 patents against Viasat in-flight connectivity systems; no element of alleged infringement is based on *any* modification or component supplied by Southwest.[1] Instead, I.V. alleges that Southwest directly infringes by "incorporat[ing] [Viasat's] technology and operat[ing] the ViaSat systems in an infringing manner." *Id*. at 6. But the "infringing manner" identified in its claim charts is simply the installation of Viasat hardware into Southwest aircraft. *See generally id.*

### B. Discovery Confirmed the Manufacturers Provide Complete Accused Systems

Discovery on Southwest's motion to sever and stay proceeded for three months, during which Southwest provided responses to four interrogatories, four requests for production, and two hours of deposition testimony. That discovery confirms that Viasat and Anuvu are the true defendants against I.V.'s claims regarding the '326 and '469 patents. Southwest's agreements with Viasat and Anuvu provide, among other things, that:



Ex. 2 § 1.03(a).

> During the Term, Supplier shall provide Payment Processing Services, as requested by Southwest, in accordance with this Agreement.

---

[1] As of this filing, I.V. has not yet served infringement contentions in *Anuvu Corporation v. I.V.*, No. 25-124 (D. Del.), but there is no reason to think the result would be different.

Ex. 2 § 1.04(h)(1); *see also id.* App. A § A.3 (listing Viasat system components to include ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮;

Ex. 3. Interrogatory No. 3 requested that Southwest "[i]dentify any hardware or software that Southwest provides with regards to the Accused Functionality or reasonably similar functionality alleged in Plaintiff's Infringement Contentions." Southwest responded: "none." Ex. 4. And Mr. Muhich confirmed Southwest buys "a full system from each of the WiFi vendors," which generally includes "an antenna, some sort of server unit, and some wireless access units." Ex. 5 at 23:25-24:5; *see also id.* at 24:6-14, 24:20-24 (both vendors provide complete systems). Southwest has no "access to any of Viasat or Anuvu's source code." *Id.* at 60:9-10; *see also id.* at 59:22-24 ("we don't have any source code for the WiFi systems in general"). Asked about accused functionality, Mr. Muhich stated that "the components that provide that functionality would be the Viasat and Anuvu systems" (Ex. 5 at 54:15-18), and that "Anuvu or Viasat would be the best people to ask" about that functionality. *Id.* at 46:15-16; *see also id.* at 56:11-16. Mr. Muhich testified that Southwest is not responsible for hardware or software changes to the accused systems; when Viasat or Anuvu update the software, it is pushed to the airplane over-the-air using the manufacturers' WiFi systems. *See id.* at 20:10-15.

C. **Viasat and Anuvu Are Indemnifying Southwest Against I.V.'s Claims**



▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. But neither supplier agreed to indemnify Southwest if an infringement claim arises ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. But they are doing so, because they bear responsibility for any alleged infringement.

3

### D. Southwest's Limited Use of Panasonic Systems

During discovery, Southwest produced a 2016 contract with Panasonic Avionics Corporation to provide in-flight connectivity systems. Dkt. 46-3 at 4-5. Though that agreement terminated in October 2018, before the damages period available to I.V. under 35 U.S.C. § 286; a small number of Panasonic systems remained on Southwest airplanes until their replacement with Anuvu systems in 2018 to 2019. Dkt. 46-3 at 4-5.

## III. ARGUMENT

### A. Discovery Confirms the Customer-Suit Exception Applies

#### 1. Southwest is a "Mere User or Reseller" of the Accused Systems

In its original Opposition, I.V. claimed Southwest is not a "mere reseller" because "a customer portal designed specifically for Southwest is not an 'off the shelf' product, even if Viasat and Anuvu are involved somehow in its design." Dkt. 18 at 5. But discovery confirmed that Viasat and Anuvu, and not Southwest, design, develop, and provide the complete accused systems—*all* of the hardware and software, including the "customer portal" on which I.V. relied.[2] *See supra* § B; Ex. 5 at 71:23-72:1, 70:19-22. I.V. now stresses that Southwest "incorporates" systems from Viasat and Anuvu "into its aircraft for 'in flight' passenger use during the applicable damages period." Supp. Opp. at 5. But even if that is true, it is irrelevant. As I.V.'s Delaware contentions confirm, no particular manner of "incorporating" an in-flight connectivity system into an aircraft is required to infringe; whether Southwest personnel or Viasat personnel physically install the allegedly infringing components makes no difference. "Incorporate" is just a fancy word for "use," and fancy

---

[2] I.V. also suggests that routine customer communications weigh against the exception, such as "team meetings with the in-flight Wi-Fi providers." Supp. Opp. at 2. But I.V. provides no authority, and none exists, showing that it is appropriate to maintain an infringement action against a manufacturer's customer because "team meetings" may have occurred.

4

words cannot make Southwest more than a mere user or reseller under the law. *See, e.g., In re Google Inc.,* 588 F. App'x 988, 990-91 (Fed. Cir. 2014).

Finally, I.V. complains that Southwest "was unable to identify the relevant components for the in-flight systems," and could not confirm "that specific witnesses and design documents critical in the case are in the possession of the IFC providers." Supp. Opp. at 6. But these facts support Southwest, not I.V.: Southwest knows very little about these systems *because Southwest "purchase[s] an entire system" from the suppliers.* Ex. 5 at 30:15-16, 31:4-5; *see supra* § B. By analogy, an iPhone user would similarly be "unable to identify the relevant components" in her iPhone and likely could not confirm "that specific witnesses and design documents critical in the case are in the possession of" Apple. But that would only confirm that Apple, and not the iPhone user, is the proper defendant in an infringement suit targeting the iPhone. Where "the bulk of the relevant evidence comes from the supplier of the accused product, not the customer," as here, "stay of the claims against the Customer Defendants is appropriate." *Topia Tech., Inc. v. Dropbox, Inc.,* No. 21-1373, 2022 WL 18109619, at *5 (W.D. Tex. Dec. 29, 2022).[3]

## 2. Southwest Agrees to be Bound by the Delaware Actions

I.V. next argues that the Court should deny a stay because "Southwest has not agreed to be bound on all findings in the DJ case and has filed additional challenges at the PTAB." Supp. Opp. at 5. To avoid raising any issue that might interfere with its motion, Southwest agrees not to relitigate and to be bound in this action by any infringement or validity determinations in the

---

[3] I.V. suggests that if it might have to take *any* "discovery regarding the operation of the component" that "is in the possession, custody, and control of a third-party," the customer-suit exception cannot apply. Supp. Opp. at 6. This statement is without citation, and for good reason: it is not the law. *E.g., GreatGigz Sols., LLC v. Costco Wholesale Corp.,* No. 21-807, 2022 WL 1037114, at *2 (W.D. Tex. Apr. 6, 2022).

5

manufacturer's actions in Delaware. Unlike I.V.'s cases against Southwest and American Airlines, these actions are before the same court, eliminating the risk of inconsistent rulings.

### 3. Viasat and Anuvu Are the Sole Source of Their Accused Systems

The bulk of I.V.'s brief concerns "newly disclosed in-flight connectivity providers." Supp. Opp. at 6, *id.* at 2, 4-6. I.V. argues that "Panasonic Avionics also provided in-flight connectivity systems during the damages time frame," *id.* at 4, pointing to Southwest's testimony that, after Southwest merged with AirTran, which "used Gogo for in-flight connectivity," AirTran planes used Gogo until the "2014, 2015 time frame." Ex. 5 at 34:23-24, 35:21. According to I.V., the exception "does not apply" because "there are multiple suppliers of in-flight connectivity systems." Supp. Opp. at 4. I.V. is wrong.

First, as a matter of law, this Court has rejected I.V.'s multiple-suppliers argument as "specious." *Kirsch Rsch. & Dev., LLC v. Bluelinx Corp.,* No. 20-316, 2021 WL 4555803, at *5 (W.D. Tex. Oct. 4, 2021). If any claim against legacy systems is actionable, the Court can and should sever those claims, as it recently did in *Flygrip, Inc. v. Walmart Inc.,* No. 21-1082, 2022 WL 2373714, at *4 (W.D. Tex. June 29, 2022). But the Court need not reach this issue because I.V. cannot recover damages for either Panasonic or Gogo systems. Any Gogo systems were replaced with Anuvu systems in the "2014, 2015 time frame," three to four years outside of the damages period under 35 U.S.C. § 286. Ex. 5 at 35:20-21; *see also id.* at 35:12-16. Likewise, the "small number" of aircraft with Panasonic systems were retrofitted "with Anuvu systems in 2018 or 2019." Ex. 5 at 32:6-10. I.V. alleges actual notice of the '326 and '469 patents on September 30, 2024, well after these systems were replaced. Dkt. 1 ¶¶ 92, 108. I.V.'s complaint does not—and cannot—allege it marked under 35 U.S.C. § 287. "[T]he patentee's 'failure so to mark' limits his damages to those incurred after actual notice." *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.,* 876 F.3d 1350, 1366 (Fed. Cir. 2017) (quoting 35 U.S.C. § 287); *see also VLSI Tech.*

*LLC v. Intel Corp.,* No. 1:19-CV-977-ADA, 2021 WL 2773013, at *3-4 (W.D. Tex. Apr. 12, 2021); *Ortiz & Assocs. Consulting, LLC v. VIZIO, Inc.,* No. 23-791, 2023 WL 7184042, at *3 (N.D. Tex. Nov. 1, 2023).[4] Since I.V. did not meet its burden "of pleading and proving [it] complied with § 287(a)'s marking requirement," *Arctic Cat,* 876 F.3d at 1367, "no damages can be recovered" for any alleged infringement by legacy Panasonic systems, let alone the decade-old Gogo systems. *Ortiz,* 2023 WL 7184042, at *3.

### B. The Court Should Also Grant Southwest's Motion Under the Traditional Factors

I.V. briefly rehashes its arguments concerning the traditional stay factors, again citing the "newly disclosed in-flight connectivity providers." Supp. Opp. at 6-7. But those systems will never be relevant to this case, *see supra,* and thus cannot impact the Court's analysis. What has changed, however, is that I.V. itself has greatly increased the complexity of this action by adding four patents to the case, resetting it to its infancy, with claim construction briefing in October. Dkt. 38-1 at 7. This change further supports a stay. *GreatGigz Sols.,* 2022 WL 1037114, at *4 (finding that "[a] stay would not impact discovery" or "progress" where "there has been no Markman and no fact or expert discovery" and where the Court had "not yet set" a trial date).

## IV. CONCLUSION

For the foregoing reasons, Southwest respectfully requests that the Court sever and stay I.V.'s claims regarding Viasat's and Anuvu's systems until final resolution of *Viasat, Inc. v. I.V.,* No. 25-56, and *Anuvu Corp. v. I.V.,* No. 25-124, in the District of Delaware.

---

[4] I.V. appears not to assert infringement of the '326 patent by Panasonic systems, likely because they used an earlier generation of Wi-Fi technology or were licensed. But even if I.V. wanted to assert infringement of the '326, it could not do so, for the reasons explained above.

| | |
|---|---|
| Date: June 26, 2025 | Respectfully submitted,<br><br>*/s/ S. Wallace Dunwoody*<br>Michael C. Wilson<br>Texas Bar No. 21704590<br>mwilson@munckwilson.com<br>S. Wallace Dunwoody<br>Texas Bar No. 24040838<br>wdunwoody@munckwilson.com<br>**MUNCK WILSON MANDALA, LLP**<br>2000 McKinney Avenue, Suite 1900<br>Dallas, Texas 75201<br>(972) 628-3600<br>(972) 628-3616 fax<br><br>David G. Henry<br>Texas Bar. No. 09479355<br>dhenry@munckwilson.com<br>**MUNCK WILSON MANDALA, LLP**<br>510 Austin Avenue, Suite 3100<br>Waco, Texas 76701<br>(254) 362-2300<br>(254) 362-2304 fax<br><br>Tri T. Truong<br>Texas Bar No. 24102969<br>ttruong@munckwilson.com<br>**MUNCK WILSON MANDALA, LLP**<br>807 Las Cimas Parkway, Suite 300<br>Austin, Texas 78756<br>737-201-1600<br>737-201-1601 fax<br><br>*Attorneys for Southwest Airlines Co.* |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this document was filed and served to all counsel of record using the Court's CM/ECF system on June 26, 2025.

> */s/ S. Wallace Dunwoody*
> S. Wallace Dunwoody

7191952

8