# EXHIBIT A-2

Atty's 22469                                                      Pat. App. 10/375,893

### Remarks:

This amendment is submitted in an earnest effort to advance this case to issue without delay.

The claims have been amended to clarify their language and defined the invention with somewhat greater particularity over the art.

The primary difference between the instant invention and the processes disclosed in US 5,603,028 of Kitsuregawa and 5,357,632 of Pian is that these systems rely on a special control process that uses load information to distribute the load between processors that share the load. With the instant invention as defined in the claims there is no such special process. The prior art's load information is not created with the process of the instant invention. Instead, the load sharing is done as a byproduct of the fact that the load-sharing process take parts of the load on a first-come/first-served basis.

A comparison would be to a road intersection where, according to the prior art, there is a traffic light that determines who can go when. The instant invention is more like such an intersection with a four-way stop so that the individual drivers determine who can go and when.

This is a major improvement since in addition to eliminating the control process it also eliminates the need to

- 6 -

collect and maintain load information, which it is very difficult to do and almost impossible to define so as to anticipate all possible processors that might execute the subtasks.

The amended claims, refer to a distribution of a description of the work to be done. The sharing process can use such a description to distribute the load without a special load process.

For these reasons the instant invention is clearly allowable over the cited art. Notice to that effect is earnestly solicited.

If only minor problems that could be corrected by means of a telephone conference stand in the way of allowance of this case, the examiner is invited to call the undersigned to make the necessary corrections.

Respectfully submitted,

K.F. Ross P.C.

by: Andrew Wilford, 26,597
Attorney for Applicant

02 March 2007
5676 Riverdale Avenue   Box 900
Bronx, NY  10471-0900
Cust. No.:  535
Tel:  718 884-6600
Fax:  718 601-1099

Enclosure:            None.



 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/375,893 | 02/27/2003 | Michael Rothschild | 22469 | 6365 |

| | | | EXAMINER |
|---|---|---|---|
| 535 | 7590 | 12/08/2006 | WU, YICUN |

THE FIRM OF KARL F ROSS
5676 RIVERDALE AVENUE
PO BOX 900
RIVERDALE (BRONX), NY 10471-0900

| ART UNIT | PAPER NUMBER |
|---|---|
| 2165 | |

DATE MAILED: 12/08/2006

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

| | Application No. | Applicant(s) |
|---|---|---|
| **Office Action Summary** | 10/375,893 | ROTHSCHILD, MICHAEL |
| | Examiner | Art Unit |
| | Yicun Wu | 2165 |

-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☒ Responsive to communication(s) filed on <u>27 February 2003</u>.
2a) ☐ This action is **FINAL**.   2b) ☒ This action is non-final.
3) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4) ☒ Claim(s) <u>1-14</u> is/are pending in the application.
   4a) Of the above claim(s) _____ is/are withdrawn from consideration.
5) ☐ Claim(s) _____ is/are allowed.
6) ☒ Claim(s) <u>1-14</u> is/are rejected.
7) ☐ Claim(s) _____ is/are objected to.
8) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9) ☐ The specification is objected to by the Examiner.
10) ☒ The drawing(s) filed on <u>27 February 2003</u> is/are: a) ☒ accepted or b) ☐ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).
11) ☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
    a) ☐ All   b) ☐ Some *   c) ☐ None of:
    1. ☐ Certified copies of the priority documents have been received.
    2. ☐ Certified copies of the priority documents have been received in Application No. _____.
    3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**
1) ☒ Notice of References Cited (PTO-892)
2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3) ☐ Information Disclosure Statement(s) (PTO/SB/08) Paper No(s)/Mail Date _____.
4) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____.
5) ☐ Notice of Informal Patent Application
6) ☐ Other: _____.

*Patent Examiner, Technology Center 2100*

U.S. Patent and Trademark Office
PTOL-326 (Rev. 08-06)                        **Office Action Summary**                        Part of Paper No./Mail Date 20061201

Application/Control Number: 10/375,893 Page 2
Art Unit: 2165

### III. DETAILED ACTION

1. Claims 1-14 are presented for examination.

*Claim Rejections - 35 USC § 103*

2. The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which the subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

3. Claims 1-5 are rejected under 35 U.S.C. 103(a) as being unpatentable over Kitsuregawa et al. (U.S. Patent 5,603,028) in view of Pian (U.S. Patent 5,357,632).

As to Claim 1, Kitsuregawa et al discloses a method of effecting a computer-executable process comprising the steps of:

(a) automatically determining file allocation (i.e. a plurality of data. Col. 3, lines 61-65) and logically subdividing records (i.e. a total Nx number of data. Col. 4, lines 55-60) of the input file (Col. 4, lines 55-60) into a plurality of partitions (Col. 4, lines 55-60);

(b) distributing (i.e. transferred. Col. 4, lines 55-60 and abstract) the partitions to a plurality (i.e. second group. Col. 4, lines 55-60) and activating respective subtasks of the computer-executable process in each of the processors (Col. 4, lines 55-60), each subtask reading and processing the partitions on a first come first serve basis (Col. 4, lines 55-60); and

Application/Control Number: 10/375,893 Page 3
Art Unit: 2165

(c) generating at least one output (i.e. output. Col. 5, lines 11-22) reflecting the processing of the subtasks (Col. 5, lines 11-22 and Col. 4, lines 55-60).

Kitsuregawa et al does not explicitly teach a plurality of processors.

Pian teaches a plurality of processors (i.e. a plurality of control processors. Col. 1, lines 49-67 and fig. 1).

Therefore, it would have been obvious to a person having ordinary skill in the art at the time the invention was made to have modified Kitsuregawa et al to include a plurality of processors.

It would have been obvious to a person having ordinary skill in the art at the time the invention was made to have modified Kitsuregawa et al by the teaching of Pian to include a plurality of processors with the motivation to more improve distributed data flow signal network as taught by Pian (column 1, line 50-55).

As to Claim 2, Kitsuregawa et al as modified teaches a method wherein
the automatic determination of file allocation and logical subdivision of records of the input file into the plurality of partitions in step (a) and the distribution of the partitions in step (b) is carried out with at least one processor (i.e. a first group of N memories. Kitsuregawa et al Col. 4, lines 49-55 and col. 2, lines 27-30) in addition to the subtask processors formulation (i.e. a second group of N memories. Kitsuregawa et al Col. 4, lines 49-55).

As to Claim 3, the teachings of Kitsuregawa et al as modified has been discussed above,

Application/Control Number: 10/375,893 Page 4
Art Unit: 2165

Kitsuregawa et al does not explicitly teach merging the subtask outputs to produce the output of step (c).

Pian teaches merging the subtask outputs to produce the output of step (c). (i.e. joins. Col. 10, lines 1-14).

Therefore, it would have been obvious to a person having ordinary skill in the art at the time the invention was made to have modified Kitsuregawa et al to include merging the subtask outputs to produce the output of step (c).

It would have been obvious to a person having ordinary skill in the art at the time the invention was made to have modified Kitsuregawa et al by the teaching of Pian to include merging the subtask outputs to produce the output of step (c) with the motivation to more improve distributed data flow signal network as taught by Pian (column 1, line 50-55).

As to Claim 4, Kitsuregawa et al as modified teaches a method wherein
the output in step (c) is a succession of outputs from the subtasks in a one to one orrespondence with the records of the input file (Kitsuregawa et al Col. 4, lines 49-60).

As to Claim 5, Kitsuregawa et al as modified teaches a method wherein
the output in step (c) is an accumulation of output records from the subtasks in an arbitrary order (Kitsuregawa et al Col. 4, lines 49-60).

As to Claim 6, Kitsuregawa et al as modified teaches a method wherein

Application/Control Number: 10/375,893 Page 5
Art Unit: 2165

the input file resides on a storage area network and is derived therefrom (fig. 3).

As to Claim 7, Kitsuregawa et al as modified teaches a method wherein the input file resides on a network attached storage and is derived therefrom (fig. 3).

As to Claim 8, Kitsuregawa et al as modified teaches a method wherein the computer-executable process is a sort process (a sort process is considered intended use).

As to Claim 9, Kitsuregawa et al as modified teaches a method wherein the computer-executable process is a statistical analysis process (statistical analysis process is considered intended use).

As to Claim 10, Kitsuregawa et al as modified teaches a method wherein the computer-executable process is a report creating process (report creating process is considered intended use).

As to Claim 11, Kitsuregawa et al as modified teaches a method wherein the computer-executable process includes a database query (database query is considered intended use).

As to Claim 12, Kitsuregawa et al as modified teaches a method wherein

Application/Control Number: 10/375,893 Page 6
Art Unit: 2165

the one processor is part of a mainframe computer (a mainframe computer is considered intended use) and the plurality of processors are processors of at least one other computer (i.e. a plurality of control processors. <u>Pian</u> Col. 1, lines 49-67).

As to Claim 13, <u>Kitsuregawa et al</u> as modified teaches a method wherein

the plurality of processors are all parts of a single multiprocessor (<u>Pian</u> Col. 1, lines 49-67 and fig. 1).

As to Claim 14, <u>Kitsuregawa et al</u> as modified teaches a method wherein

the automatic determination of file allocation and logical subdivision of records of the input file into the plurality of partitions in step (a) and the distribution of the partitions in step (b) is carried out with at least one processor (<u>Kitsuregawa et al</u> Col. 4, lines 49-60), and

the one processor and the plurality of processors are all parts of a single multiprocessor (<u>Pian</u> Col. 1, lines 49-67 and fig. 1).

Application/Control Number: 10/375,893                                    Page 7
Art Unit: 2165

## *Points of contact*

4.  Any inquiry concerning this communication or earlier communications from the examiner should be directed to Yicun Wu whose telephone number is 571-272-4087. The examiner can normally be reached on 8:00 am to 4:30 pm, Monday -Friday.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Jeffrey Gaffin can be reached on 571-272-4146. The fax phone numbers for the organization where this application or proceeding is assigned are 571-273-8300.

Any inquiry of a general nature or relating to the status of this application or proceeding should be directed to the receptionist whose telephone number is 571-272-2100.

Yicun Wu
Patent Examiner
Technology Center 2100

December 5, 2006