# EXHIBIT A-7

REMARKS

The above Amendments and these Remarks are in reply to the Office Action mailed September 22, 2006

Currently, claims 1-109 are pending. Claims 1-6, 8-16, 19, 20, 25, 26, 28, 29, 30-36, 38-54, 56-59, 62-64, 69, 73-75, 78-80, 84-87, 93, 100, 103, 104 and 106. No new matter is entered. Claim 101 is cancelled.

Claims 1-109 have been rejected under 35 U.S.C. 102 as being anticipated by Cheline et al. (US2003/0041136) (Cheline). Applicants respectfully traverse the rejection.

Cheline is concerned with automatically configuring a virtual private network (VPN). A VPN provides a secure tunnel between a server side system 130 and a client side system 108 (Fig. 1). In this approach, a service provider system 146 provides instructions to configure and control a modem 106 at the client side system 108 and a VPN concentrator 136 at the server side system 130 to provide a VPN tunnel between the modem and the VPN concentrator (par. 31, 33 and 42). The modem can also provide network address translation (NAT) (par. 47). This approach allows a number of client computers in a LAN 104 on the client side system 108 to communicate with the server side system 130 via the VPN tunnel.

However, Applicants' invention differs from Cheline's system in many important aspects. For example, claim 1 sets forth a virtual community network system which includes a virtual network manager including at least one virtual community definition comprising at least a domain name and a user set. Cheline resolves host names in a VPN using multiple DNS servers so that a client knows whether to communicate with an internal DNS Server, which contains private IP addresses, or an external DNS Server, which contains public IP addresses (par. 87 and 88). However, this is not the same as providing a virtual community definition, that is, a definition of a virtual community, which includes a domain name. The fact that Cheline resolves a host name is different than using a domain name as part of a definition of a virtual community.

Further, claim 1 sets forth that a virtual network manager provides virtual network addresses to users in the user set when the users join the virtual community, the users are identified by one another in the virtual community by their virtual network addresses and the virtual network addresses are not directly routable. In Cheline's system, a user's client computer uses either a corporate assigned IP address that can be routed within the server side system, or a private non-routable IP address which is translated using NAT to assume a corporate assigned IP

- 19 -

address (par. 51). The corporate assigned IP address that can be routed is not a virtual network address that is not directly routable. Further, the private non-routable IP address is not a virtual address by which users are identified by one another in a virtual community. Moreover, there is no indication that such an IP address is provided by a virtual network manager when the user joins a virtual community.

In view of the above, claim 1 is clearly patentable over the cited reference.

Further, the dependent claims of claim 1 provide further patentable features. For example, claim 5 sets forth that a virtual network manager detects a presence of a NAT device when an agent installed in a private network on a processing device behind the NAT device contacts the virtual network manager in an attempt to join the virtual community. Even if, arguendo, the modem 106 of Cheline is a NAT device and the VPN provider can receive communications from the NAT device, the VPN provider does not know, and does not detect, if the communication is from behind the NAT device.

The specific technique used to detect the presence of a NAT device as set forth in claim 29 similarly is neither disclosed nor suggested by Cheline.

Further, claim 8 sets forth that processing devices of the users in the virtual community are configured with both a virtual network address and a physical address. In contrast, Cheline indicates that a user's client computer uses either a corporate assigned IP address or a private non-routable IP address (par. 51). There is no indication that the user's client computer is configured with a virtual network address and a physical address, e.g., where the users are identified by one another in the virtual community by their virtual network addresses. Cheline does not provide both types of addresses to the clients 102.

Claim 12 sets forth details of how a first NAT device associated with a first processing device on a first private network transmits packets to a second processing device. The first NAT device transmits packets to a route director, and the packets include encapsulated packets provided by the first processing device in which a source address is the virtual network address of the first processing device, a destination address is the virtual network address of the second processing device and a shim includes the physical address of the first processing devices as a private network address in the first private network. Cheline fails to disclose or suggest this feature.

- 20 -

Claim 15, which depends on claim 12, sets forth that the second processing device is coupled to a second private network and accesses a public network via a second NAT device. In this case, the shim also includes the physical address of the second processing devices as a private network address in the second private network. Cheline is not concerned with processing devices in different private networks communicating in this manner. Instead, Cheline is concerned with clients 102 on a common LAN at client side system 108 communicating with a server side system 130 via a VPN. The clients 102 on the LAN do not communicate with clients on another private network

The remaining dependent claims of claim 1 are similarly patentable over Cheline.

Regarding independent claim 32, the client 102 of Cheline can hardly be considered to be a management device for a virtual community since the client does not perform any managing as claimed. Further, while each client can have an IP address which can be routed through the server side system (par. 51), the clients do not include a network interface coupled to a public address realm. Moreover, the Examiner asserts that the service provider system 146 is a network traffic router as claimed. However, the service provider system 146 is used for providing instructions to configure and control a modem 106 at the client side system 108 and a VPN concentrator 136 at the server side system 130 to provide a VPN tunnel (par. 31, 33 and 42). There is no disclosure or suggestion that the service provider system 146 routes traffic between members of a virtual community as claimed. Moreover, there is no need for the service provider system to route traffic as claimed since the client side system and the server side system communicate directly via the VPN tunnel.

Claim 32 is therefore clearly patentable over Cheline.

Further, the dependent claims of claim 32 provide additional patentable features. For example, regarding claim 35, the client of Cheline is not a management device with a TCP port capable of communicating network traffic in a virtual community to allow members of the virtual community to register and join in the virtual community. The client of Cheline is also not involved with allowing other members of the virtual community to register and join in the virtual community.

Regarding claim 41, Cheline at par. 67 and 68 refers to a client requesting the initiation of a VPN session. However, Cheline does not disclose or suggest that a management device includes a member join module which allows a particular member to notify the management

device via a join request that the particular member is available to participate in the virtual community, and to notify the management device via a leave request that the particular member is no longer available to participate in the virtual community.

Regarding claim 44, Cheline resolves host names in a VPN using multiple DNS servers so that a client knows whether to communicate with an internal DNS Server or an external DNS Server (par. 87 and 88). However, Cheline does not disclose or suggest the features of claim 44 as amended. For example, the client 102(1) of Cheline does not communicate with the DNS server 120 to obtain a virtual network address and private network address of another client such as client 102(2) and to obtain a public network address of the service provider system 146, which is asserted by the Examiner to be a network traffic router as claimed.

The remaining dependent claims of claim 32 are similarly patentable over Cheline.

Regarding independent claim 53, Cheline at par. 86 states that multiple VPNs can be established over a single modem, thus avoiding the need for multiple modems. Cheline indicates that previously, separate modems and telephone lines were need for two clients to communicate via separate VPN tunnels. For example, a husband would communicate with his office via one modem and VPN tunnel, and a wife would communicate with her office via another modem and VPN tunnel (par. 7). Thus, the husband and wife as clients would not be part of the same community. In contrast, claim 53 sets forth routing communications between first and second community members in a community.

Claim 53 and its dependent claims are therefore clearly patentable over Cheline.

Independent claims 64 sets forth, in part, assigning members a respective virtual address, where the virtual addresses are not directly routable, and routing network traffic between the members in a virtual community. Cheline at par. 55 refers to using a DHCP server to allow network administrators to assign IP addresses to client computers. However, these addresses are not virtual addresses which are not directly routable.

Claim 64 and its dependent claims are therefore clearly patentable over Cheline.

Independent claim 80 sets forth, in part, managing a virtual community network realm, defining a member set of users entitled to communicate in the virtual community, and registering users with the virtual community to allow the users to communicate with one another. In contrast, as discussed, Cheline is only concerned with enabling clients to communicate via one or more VPN tunnels with a server, but not with other clients (par. 67).

- 22 -

Claim 80 and its dependent claims are therefore clearly patentable over Cheline.

Claim 93 sets forth, in part, a virtual network manager having a network interface coupled to a network, the manager including at least one virtual community definition comprising at least a domain name and a user set. As discussed above in connection with claim 1, Cheline resolves host names in a VPN using multiple DNS servers so that a client knows whether to communicate with an internal DNS Server or an external DNS Server (par. 87 and 88). However, this is not the same as providing a virtual community definition, that is, a definition of a virtual community, which includes a domain name. The fact that Cheline resolves a host name is different than using a domain name as part of a definition of a virtual community.

Claim 93 and its dependent claims are therefore clearly patentable over Cheline.

Based on the above amendments and these remarks, reconsideration of claims is respectfully requested.

The Examiner's prompt attention to this matter is greatly appreciated. Should further questions remain, the Examiner is invited to contact the undersigned attorney by telephone.

The Commissioner is authorized to charge any underpayment or credit any overpayment to Deposit Account No. 501826 for any matter in connection with this response, including any fee for extension of time, which may be required.

Respectfully submitted,

Date:  March 22, 2007          By:  /Ralph F. Hoppin/
                                    Ralph F. Hoppin
                                    Reg. No. 38,494


VIERRA MAGEN MARCUS & DENIRO LLP
575 Market Street, Suite 2500
San Francisco, California 94105-4206
Telephone: (415) 369-9660
Facsimile:  (415) 369-9665

- 23 -

Attorney Docket No.: TTCC-01021US0
ttcc/1021/1021.response-001