# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### MIDLAND/ODESSA DIVISION

INTELLECTUAL VENTURES I LLC and
INTELLECTUAL VENTURES II LLC,

    *Plaintiffs,*

    v.

SOUTHWEST AIRLINES CO.,

    *Defendant.*

**Civil Action No. 7:24-cv-00277-ADA**

**JURY TRIAL DEMANDED**

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S
## RULE 12(b)(6) MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ............................................................................................... 1

II.    BACKGROUND ................................................................................................ 1

III.    ARGUMENT ..................................................................................................... 2

    A.    Each of the '582, '584, '844, and '282 Patents are Patent Eligible under § 101. ............... 2

        1.    The '582 Patent Is Valid Under 35 U.S.C. § 101. ........................................................ 2

        2.    The '584 Patent Is Valid Under 35 U.S.C. § 101. ........................................................ 6

        3.    The '844 Patent and '282 Patent Are Valid Under 35 U.S.C. § 101. ........................... 11

    B.    IV is Not Precluded From Obtaining Pre-Suit Damages. .................................................. 16

    C.    IV Plausibly and Sufficiently Pled Infringing Uses for the Cloud Patents. ...................... 18

IV.    CONCLUSION ................................................................................................ 20

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
    882 F.3d 1121 (Fed. Cir. 2018)...................................................................................30

*Addiction and Detoxification Institute LLC v. Carpenter*,
    620 Fed Appx. 934 (Fed. Cir. 2015)...........................................................................33

*AlexSam, Inc. v. Aetna, Inc.*,
    119 F.4th 27 (Fed. Cir. 2024) ...............................................................................31, 32

*Altair Logix LLC v. Netgear, Inc.*,
    No. CV 20-1004-MN-CJB, 2021 WL 6424910 (D. Del. Dec. 6, 2021)......................8

*Arctic Cat Inc. v. Bombardier Recreational Prods., Inc.*,
    876 F.3d 1350 (Fed. Cir. 2017)...................................................................................31

*Berkheimer v. HP Inc.*,
    881 F.3d 1360 (Fed. Cir. 2018)......................................................................10, 22, 29

*Boelens v. Redman Homes, Inc.*,
    759 F.2d 504 (5th Cir. 1985) .........................................................................................2

*Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*,
    778 F. App'x 882 (Fed. Cir. 2019) ..............................................................................18

*buySAFE, Inc. v. Google Inc.*,
    765 F.3d 1350 (Fed. Cir. 2014)...................................................................................18

*Celanese Int'l Corp. v. Anhui Jinhe Indus. Co., Ltd.*,
    No. 20-1775-LPS, 2021 WL 7209494 (D. Del. Dec. 10, 2021) .................................34

*Celgard, LLC v. Shenzhen Senior Technology Material Co. (US) Research
    Institute*,
    No. 19-cv-05784-JST, 2020 WL 7392909 (N.D. Cal. July 23, 2020)...................33

*ChargePoint, Inc. v. SemaConnect, Inc.*,
    920 F.3d 759 (Fed. Cir. 2019)....................................................................................18

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
    776 F.3d 1343 (Fed. Cir. 2014)..........................................................................9, 27, 29

*Contour IP Holding, LLC v. GoPro, Inc.*,
    113 F.4th 1373 (Fed. Cir. 2024) .............................................................................17, 26

*Cooperative Ent., Inc. v. Kollective Tech., Inc.*,
   50 F.4th 127 (Fed. Cir. 2022) ........................................................................ *passim*

*CosmoKey Sols. GmbH & Co. KG v. Duo Sec. LLC*,
   15 F.4th 1091 (Fed. Cir. 2021) ..............................................................9, 21, 29

*Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*,
   559 F.3d 1308 (Fed. Cir. 2009)..............................................................................30

*DynaEnergetics Europe GmbH v. Hunting Titan, Inc.*,
   629 F.Supp.3d 548 (S.D. Tex. 2022) .....................................................................30

*Elec. Power Grp., LLC v. Alstom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016)..............................................................................20

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016)....................................................................5, 17, 25

*Intell. Ventures I LLC v. Capital One Bank (USA)*,
   792 F.3d 1363 (Fed. Cir. 2015)................................................................................7

*Intell. Ventures I LLC v. Erie Indem. Co.*,
   850 F.3d 1315 (Fed. Cir. 2017)..............................................................................27

*Intell. Ventures I LLC v. Symantec Corp.*,
   838 F.3d 1307 (Fed. Cir. 2016)..........................................................................9, 29

*Intell. Ventures II, LLC v. FedEx Corp.*,
   No. 2:16-CV-00980-JRG, 2018 WL 7823098 (E.D. Tex. May 10, 2018) ...............5

*JVC Kenwood Corp. v. Nero, Inc.*,
   797 F.3d 1039 (Fed. Cir. 2015)..............................................................................34

*Ravgen, Inc. v. Natera, Inc.*,
   No. 1:20-CV-00692-ADA, 2024 WL 150960 (W.D. Tex. 2024).....................10, 30

*Raytheon Co. v. Cray, Inc.*,
   No. 2:16-CV-00423-JRG-RSP, 2017 WL 1362700 (E.D. Tex. Mar. 13, 2017) ...................32

*SAP America, Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018)..............................................................................19

*SRI Int'l Inc. v. Cisco Sys., Inc.*,
   930 F.3d 1295 (Fed. Cir. 2019)................................................................................8

*Synopsys, Inc. v. Mentor Graphics Corp.*,
   839 F.3d 1138 (Fed. Cir. 2016)..............................................................................27

*In re TLI Commc'ns LLC Patent Litig.*,
    823 F.3d 607 (Fed. Cir. 2016) .......................................................................26, 27

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017) ...............................................................7, 19, 22

*Ultravision Techs., LLC v. Eaton Corp. PLC*,
    No. 2:29-cv-00290-JRG, 2019 WL 11250161 (E.D. Tex. Nov. 8, 2019) ................2

*Versata Software, Inc. v. NetBrain Techs., Inc.*,
    No. 13-676-LPS-CJB, 2015 WL 5768938 (D. Del. Sept. 30, 2015) ......................27

*Visual Memory LLC v. NVIDIA Corp.*,
    867 F.3d 1253 (Fed. Cir. 2017) .........................................................................27

*WirelessWerx IP LLC v. OnStar, LLC*,
    No. 2:23-cv-11501-MAG-APP, 2024 WL 1607018 (E.D. Mich. Apr. 12,
    2024) ..............................................................................................................33

**Statutes**

35 U.S.C. ...............................................................................................................30

35 U.S.C. § 101 ............................................................................................. *passim*

35 U.S.C. § 287 ..................................................................................................1, 30

**Other Authorities**

Fed. R. Civ. P. 12 ....................................................................................................3

Fed. R. Civ. P. 12(b)(6) .......................................................................................1, 30

## I.     __INTRODUCTION__

The Court should reject Southwest's Rule 12(b)(6) Motion to Dismiss ("Motion" or "Mot.") in its entirety. ___First___, the asserted claims of the '582, '584, '282, and '844 Patents are valid under 35 U.S.C. § 101 because they are not directed to an abstract idea and recite an inventive concept. Further, there is a factual dispute as to whether the limitations recited in those asserted claims were well-understood, routine, or conventional to a person of ordinary skill in the art at the time of the invention. ___Second___, Southwest's argument to dismiss pre-suit damages for all asserted patents ignores case law that no marking requirement applies to method claims and is premature because Southwest has not met its burden to identify specific product(s) it reasonably believes practices the asserted patents. ___Third___, IV's infringement contentions are supported by plausible factual allegations based on public information that more than satisfy any pleading requirements. Southwest's arguments fail because IV has identified non-authorized uses of the asserted cloud patents and has sufficiently defined the accused Southwest products and services.

## II.     __BACKGROUND__

On November 2, 2024, Plaintiffs Intellectual Ventures I LLC and Intellectual Ventures II LLC (collectively, "IV") filed its Complaint against Defendant Southwest Airlines Co. ("Southwest") alleging infringement of six patents. Dkt. 1. IV subsequently filed a First Amended Complaint on May 23, 2025, and subsequently a Second Amended Complaint ("SAC") on September 2, 2025, alleging infringement of a further four patents (10 patents total). Dkts. 52, 64. On September 16, 2025, Southwest filed this Motion to Dismiss ("Motion") the SAC, alleging (i) that four of the asserted patents recite unpatentable subject matter under 35 U.S.C. § 101; (ii) IV is precluded from seeking pre-suit damages due to an alleged failure to mark; and (iii) IV fails to plead infringing uses for the asserted cloud patents. Dkt. 64.

III.    **ARGUMENT**

A.    **Each of the '582, '584, '844, and '282 Patents are Patent Eligible under § 101.**

As described below, each of the '582, '584, '844, and '282 Patents recite patentable subject matter under § 101. Alternatively, there are plausible factual disputes that defeat Southwest's Motion. *See Coop. Ent., Inc. v. Kollective Tech., Inc.*, 50 F.4th 127, 130 (Fed. Cir. 2022) ("[P]atent eligibility may be resolved … only if there are no plausible factual disputes after drawing all reasonable inferences from the intrinsic and … record in favor of the non-movant.").

1.    **The '582 Patent Is Valid Under 35 U.S.C. § 101.**

a.    The '582 Patent Is Not Directed to an Abstract Idea.

The '582 Patent discloses techniques for parallelization of data processing tasks, increasing the speed of execution of processes, and balancing the loads of computer resources during execution. The invention of independent claim 1, including its non-routine and unconventional steps, recites in part "[a] method of effecting on a preexisting input file a computer-executable process comprised of a plurality of subtasks, the method comprising the steps of: (a) automatically determining file allocation and logically subdividing records of said input file into a plurality of partitions; (b) ***distributing descriptions of all of said partitions to each of a plurality of subtask processors***; (c) ***simultaneously executing at least a respective one of the subtasks of the computer-executable process in each of at least some of said processors on a respective one of the partitions with each subtask reading and processing the respective partition so as to process the respective partition*** and produce respective subtask output and; (d) ***thereafter repeating step (c) in at least some of the subtask processors each with another unprocessed partition on a first-come/first-served basis***; and (e) generating at least one output combining all of the subtask outputs and reflecting the processing of all of said subtasks." Dkt. 1-6 at 6:44-64.

Claim 1 discloses an improvement in data processing through improvements in the use of parallelization, *i.e.*, using multiple computers or computing resources to perform a given task. *See* Dkt. 1-6 at 1:33-38. The improvements captured by claim 1 address known technical problems in "split[ting] the performance of a given task among a plurality of processing units": "[t]he load imposed on the various computers … is normally the result of the activities directed specifically to these computers and the fact that one of them is especially loaded while others are relatively idle"—this imposed load "*does not affect the way work is distributed between them*." Dkt. 1-6 at 1:14-17, 1:29-33 (emphasis added). The specification explains that the '582 Patent invention allows for the use of multiple computers to optimize execution of processes and improve parallelization by "taking the available capacity of each of these computers into account while optimizing execution," "improv[ing] processing efficiency of certain processes, and improving "processor utilization." Dkt. 1-6 at 1:48-57. These improvements to parallel computing are captured in claim 1, as confirmed by the '582 Patent file history, as described below. The technical solutions reflected in claim 1 of the '582 Patent provide specific benefits to the '582 Patent technical environments. *See id*. at 2:30-38. The claims of the '582 Patent thus recite a specific technological solution to problems unique in computer processing. *See Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016) ("our conclusion … is bolstered by the specification's teachings that the claimed invention achieves other benefits over conventional [technology]"); *see also Intell. Ventures II, LLC v. FedEx Corp.*, No. 2:16-CV-00980-JRG, 2018 WL 7823098, at *4 (E.D. Tex. May 10, 2018) ("specific technologic modifications to solve a problem or improve the functioning of a known system generally produce [non-abstract] patent-eligible subject matter.").

Southwest's argument fundamentally fails because it mischaracterizes the '582 Patent file history in attempting to argue that the applicant admitted that the "primary difference" over the

prior art is the use of the recited "first-come/first-served" ("FCFS") execution of partitions. Mot. at 3, 5. While FCFS is one aspect of the '582 Patent invention, it is ***not*** limited to that aspect, as shown in the highlighted passages below:

> The primary difference between the instant invention and the processes disclosed in US 5,603,028 of Kitsuregawa and 5,357,632 of Pian is that these systems rely on a special control process that uses load information to distribute the load between processors that share the load. ***With the instant invention as defined in the claims there is no such special process***. The prior art's load information is not created with the process of the instant invention. ***Instead, the load sharing is done as a byproduct of the fact that the load-sharing process take parts of the load on a first-come/first-served basis***.
>
>      \*     \*     \*
>
> ***This is a major improvement since in addition to eliminating the control process it also eliminates the need to collect and maintain load information, which it is very difficult to do and almost impossible to define so as to anticipate all possible processors that might execute the subtasks***.
>
> ***The amended claims, refer to a distribution of a description of the work to be done. The sharing process can use such a description to distribute the load without a special load process***.

Dkt. 55-3 at 6-7 (emphasis added); *see also* Ex. 1 at 2. As shown, the FCFS algorithm and the distributing descriptions limitation is relevant to the '582 Patent invention.

   Southwest's characterization of the alleged abstract idea for the '582 Patent, *i.e.*, "queue management technique," also fails because it does not consider the '582 Patent invention's simultaneous execution of subtasks on subtask processors on a first-come/first-served basis based on the distribution of partition descriptions. Southwest's attempted analogy of the '582 Patent invention to "break a job into smaller tasks, assign them to workers, and have workers request new tasks when finished" (Mot. at 4) fails because the '582 Patent is rooted in technical improvements to technical systems (*see* Dkt. 1-6 at 1:46-2:38). The *Two-Way Media*[1] case cited by Southwest

---

[1] *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329 (Fed. Cir. 2017).

does not change this conclusion. In *Two-Way Media*, the court found that the patentee's proposed claim constructions failed to "indicate how the claims are directed to a scalable network architecture that itself leads to an improvement in the functioning of the system." *Two-Way Media*, 874 F.3d at 1338. Here, claim 1 discloses improvements to the functioning of distributed execution of computer processes. *See* Dkt. 1-6 at 1:48-57. Southwest's reliance on *Capital One*[2] is similarly misplaced, as that case involved the abstract idea of "tracking financial transactions to determine whether they exceed a pre-set spending limit (*i.e.*, budgeting)," *Capital One*, 792 F.3d at 1367.

The claims of the '582 Patent are better analogized to *SRI Int'l* and *Altair Logix*.[3] In *SRI Int'l*, the Federal Circuit found patent-eligible claims that modified "the normal, expected operation of a conventional computer network." *See id*. at 1303-04. Similarly, in *Altair Logix*, the court found that a patent that described "particular components that are configured in a particular way" was patent eligible because it "improve[d] the way computers work." *Id*. at *6. Notably, the patent at issue in *Altair Logix* required multiple processing units working together to provide the benefits of "remov[ing] redundancy and reduc[ing] cost."[4] *Id*. at *4.

Southwest's argument that the '582 Patent allegedly concedes that most of the steps recited in claim 1 were conventional fails because the specification makes no such concessions. At most, the '582 Patent specification acknowledges various techniques for defining a "logical partition." Dkt. 1-6 at 3:37-51. This argument also fails because it does not negate the fact that the steps recited in claim 1, considered as a whole, are novel and inventive.

b.     The '582 Patent Recites an Inventive Concept.

---

[2] *Intell. Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363 (Fed. Cir. 2015).

[3] *SRI Int'l Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295 (Fed. Cir. 2019); *Altair Logix LLC v. Netgear, Inc.*, No. CV 20-1004-MN-CJB, 2021 WL 6424910 (D. Del. Dec. 6, 2021).

[4] The court also rejected arguments that the "claimed computer components and the way they interact with each other are merely 'generic' and 'employed in the conventional manner,'" where nothing in the record showed this to be the case. *See Altair Logix*, 2021 WL 6424910, at *5.

This Court need not reach this step. Regardless, the '582 Patent asserted claims are directed to an inventive concept, rendering them patent eligible. *See supra* at Section III.B.1.a. The improvements described in the '582 Patent specification and reflected in its claims render the '582 Patent claims eligible under step two. *See CosmoKey Sols. GmbH & Co. KG v. Duo Sec. LLC*, 15 F.4th 1091, 1098-1099 (Fed. Cir. 2021) (technical improvements render claim eligible at step two). Southwest's arguments regarding the supposed conventionality of the '582 Patent fail because they are not supported by evidence and are contradicted by the '582 Patent file history. *See Ravgen, Inc. v. Natera, Inc.*, No. 1:20-CV-00692-ADA, 2024 WL 150960, at *2 (W.D. Tex. Jan. 12, 2024) ("[A]side from attorney argument, [Defendant] does not cite any evidence that the combination of the claimed elements was routine and conventional."). Southwest's arguments regarding the "conventional" nature of the limitations or ordered combination of the claims suggest, at most, a factual dispute that cannot be resolved on the pleadings. *See supra, Aatrix Software* and *Cooperative Ent.*; *see also Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018) ("The improvements in the specification, to the extent they are captured in the claims, create a factual dispute regarding whether the invention describes well-understood, routine, and conventional activities."). The alleged authorities relied upon by Southwest, *i.e.*, *Content Extraction* and *Symantec*, failed to claim any specific improvements over prior art methods, unlike the '582 Patent. Further, ***none*** of the authorities cited by Southwest relate to parallel processing systems.

### 2. The '584 Patent Is Valid Under 35 U.S.C. § 101.

#### a. The '584 Patent Is Not Directed to an Abstract Idea.

The '584 Patent relates to distributed computing and multi-cluster computing environments. Dkt. 52-17 at Abstract. A cluster includes "a computer or processors, network or communication links for transferring data among the grouped resources, data storage, and other devices to perform one or more assigned computing processes or tasks." Dkt. 52-17 at 1:25-31.

Multi-clusters use multiple clusters to perform tasks, but raise technical issues because of their technical complexity such as "arranging the clusters in a consistent and useful manner and of controlling client access to the clusters" and "monitoring the individual cluster components." Dkt. 52-17 at 4:28-38 (emphasis added). The specification describes multiple failed attempts to address these technical issues. *See* Dkt. 52-17 at 2:32-51.

The '584 Patent specification provides concrete improvements over prior cluster computing techniques by enabling each cluster within a multi-cluster environment to be customizable and include a "configuration" that differs from other clusters in the multi-cluster environment that better handles certain types of client tasks. Dkt. 52-17 at 2:64-3:56. The system is further improved by a monitoring system that "monitors the clusters for connectivity and availability or other operational problems on a cluster level and … per-node basis" and a gateway that operates in part to "isolate each cluster such that communications within a cluster." Dkt. 52-17 at 3:35-56. Claim 1 of the '584 Patent captures technical improvements to multi-cluster environments and provides concrete benefits to the functioning of such multi-cluster environments by enabling a hosted computing infrastructure that is dynamically customizable and highly scalable, capable of being monitored at the cluster and node levels, and maintaining robust security required for many multi-cluster applications. The following limitations confirm that claim 1 does not recite conventional and routine elements:

- "a monitoring system to monitor operations of the first cluster or the second cluster for communication problems";

- "wherein the first cluster establishes communications between the set of computing resources of the first cluster and a first gateway communicatively linked between the first cluster and the private communications network";

- "wherein the second cluster establishes communications among the set of computing resources of the second cluster and a second gateway communicatively linked between the second cluster and the private communications network"; and

- "wherein communications between the first cluster and the second cluster are isolated." *See* Dkt. 52-17 at 11:8-45.

Southwest's characterization of the '584 Patent (Mot. at 7-9) is flawed because it fails to consider the specification in its entirety and ignores the elements recited in claim 1. For example, Southwest describes the '584 Patent invention as enabling clients to "access their hosted cluster from a remote location," Mot. at 8, but this argument and its corresponding citations to the '584 Patent specification describe <u>*benefits*</u> of the claimed invention, not the improvements captured by claim 1. Further, these arguments are made independent of claim 1, which Southwest misleadingly reproduces in a heavily excerpted version. *See* Mot. at 8-9. Southwest also mischaracterizes the '584 Patent invention when it alleges that "only distinction claimed over conventional clusters is location," citing to the specification at column 4 lines 19 to 23. However, a careful reading of that section shows that the specification describes that the invention of the '584 Patent "differ[s] from prior clusters <u>***in part***</u> because they are physically provided at one or more locations that are remote from the processing user or client's facilities …." Dkt. 1-17 at 4:19-23 (emphasis added). The language "in part" this is merely one aspect of the '584 Patent invention, not the entirety of it.

Southwest argues that the '584 Patent addresses a "business" problem, not a technological problem, Mot. at 9, but this argument is contradicted by the '584 Patent specification, which describes improvements to cluster computing environments by improving for example the monitoring capabilities and multi-cluster security. Because the '584 Patent invention (captured in claim 1) is not logistical, but instead describes a technical solution to problems in multi-cluster environments, it is patentable under § 101. *See* Dkt. 52-17 at 11:8-45. Similarly, Southwest's argument that the references to "clusters" in claim 1 and recited elements are "defined broadly and generically" and the recited elements in that claim do not provide any improvement to the clusters, computing resources, or monitoring system'" (Mot. at 9) is wrong because Southwest admits that

"configuration" can refer to technical aspects of the invention, including the cluster's physical components and resources, topology, software running on computing resources, and software utilized to manage the cluster. *See, e.g.,* Dkt. 52-17 at 8:37-58 (describing novel multi-cluster customization and monitoring system), 7:1-18 (same), 6:58-63 (same), 8:4-10 (same), 10:1-7 (same). At a minimum, there are plausible factual disputes that defeat Southwest's Motion.

Southwest alleges claim 1 of the '584 Patent is directed to the abstract idea of "offloading computing tasks to remote clusters and monitoring them." Mot. at 9. This oversimplification of the '584 Patent invention should be rejected because it fails to capture the '584 Patent invention and its specific technical improvement to a technical problem, *i.e.*, improving monitoring, reconfiguration, and security in multi-cluster systems having shared infrastructure. *See Contour IP Holding, LLC v. GoPro, Inc.*, 113 F.4th 1373, 1379-80 (Fed. Cir. 2024) (instructing that courts "must avoid describing the claims at a high level of abstraction, divorced from the claim language itself" and avoid "characterize[ing] the claims at an impermissibly high level of generality"); *see also Enfish*, 822 F.3d at 1339. The '584 Patent specification confirms the invention provides technical solutions and related benefits, such as "enhanced processing" and "enhanced data storage," "access control," "customiz[ing] cluster[s]," and improved "monitoring of multiple customizes clusters," among other technical enhancements resulting in improvement of multi-cluster environments. Dkt. 52-17 at 2:64-3:10, 6:58-7:18.

Southwest cites several decisions in its Motion (Mot. at 9-12), none of which are helpful to its arguments. *Bridge & Post* is inapposite because the abstract idea at issue was "'intercepting' traffic" between a client computer and a server computer. *Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882, 892 (Fed. Cir. 2019). *ChargePoint* and *buySAFE* are not relevant, as "communicating requests to a remote server and receiving communications from that

server" (Mot. at 9) is materially different from the '584 Patent subject matter. *Cf.* Dkt. 52-17 at 11:8-45 with *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 768 (Fed. Cir. 2019) (describing the patent at issue "directed to the abstract idea of communication over a network to interact with a device connected to the network") and *buySAFE, Inc. v. Google Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (describing claim relating to "receiv[ing] a request for a guarantee and transmit[ting] an offer of guarantee in return"). The '584 Patent invention discloses improvement of multi-cluster environments, not intercepting network communications. *Two-Way Media* does not apply to the '584 Patent because that patent focused on techniques for "transmitting message packets over a communications network." *Two-Way Media*, 874 F.3d at 1334-35. *InvestPic* is similarly unavailing, as that patent involved "calculating, analyzing, and displaying investment data," which is a completely different field than the '584 Patent. *See SAP America, Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1164 (Fed. Cir. 2018). Southwest appears to rely on *InvestPic* to argue that the '584 Patent relies on "standard computers" for implementing monitoring functionalities as recited in claim 1, such as "IPMI" and "SNMP technologies. Mot. at 10-11. However, the specification of the '584 Patent make clear that the monitoring system only ***partially*** uses off-the-shelf software and hardware, and uses other unconventional and novel software. Dkt. 52-17 at 8:37-58. *Electric Power* is similar inapposite because the '584 Patent focuses on an improvement in multi-cluster environments and recites unconventional software. *Electric Power* in contrast focused on independent abstract ideas that use computers as tools. *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016).[5]

---

[5] *Electric Power Group* also involved a review of a decision that had been disposed of on summary judgment, such that there was a fully developed factual record that could address for example state of the prior art, claim construction, and preemption effects under § 101. That is not present here.

Further, courts have found that claims directed to monitoring systems, such as the '584 Patent, are patent eligible. *See TaKaDu Ltd. v. Innovyze, Inc.*, No. 21-cv-00291-RGA, 2022 WL 684409, at *4-6 (D. Del. Mar. 8, 2022) (finding claims for monitoring a water utility network were not directed to an abstract idea because they were directed to improved monitoring methods of water utility networks and resource distribution), *Data Health Partners, Inc. v. Teladoc Health, Inc.*, 734 F.Supp.3d 315, 326 (D. Del. 2024) (finding that claims including a "method of statistical analysis to improve the monitoring of goal outcomes for patient" were patent eligible under § 101).

b.    The '584 Patent Recites an Inventive Concept.

Because claim 1 of the '584 Patent is not directed to an abstract idea, this Court need not reach step two of the Alice test. Regardless, the '584 Patent recite inventive concepts that would make them patent-eligible under step two, even if Southwest had met its burden under step one. *See supra,* Section III.B.2; *see also supra, CosmoKey*. Indeed, the specification provides factual support that the '584 Patent is anything but well-understood, routine, or conventional to a person of ordinary skill in the art at the time of the invention. For example, the specification describes multiple failed attempts to address technical problems with multi-cluster environments. *See* Dkt. 1-17 at 2:26-51; *see also supra* at Section III.B.1. These attempts failed to solve issues with multi-cluster environments, in contrast to the '584 Patent invention. Southwest alleges that claim 1 recites "standard" components, including the public and private communications networks, multiple clusters, and monitoring system. Mot. at 11. But its arguments rely solely on the disclosure of IPMI and SNMP, which do not (and cannot) disclose all aspects of the '584 Patent monitoring system, and do not relate at all to the gateway mechanism. This raises disputes that are inappropriate to resolve through a 12(b)(6) motion. *See Berkheimer*, 881 F.3d at 1369.

3.    **The '844 Patent and '282 Patent Are Valid Under 35 U.S.C. § 101.**

a.    The '844 and '282 Patents Are Not Directed to an Abstract Idea.

The '844 and '282 Patents claim an invention that provides concrete benefits to the functioning of distributed computer systems, such as a server grid, by using common "root images" for multiple compute nodes along with distinct "leaf images" for specific computing nodes, where the data blocks of the specific compute nodes differ from the root image data blocks. Dkt. 1-1 at 2:37-48; Dkt. 52-19 at 2:17-58.[6] The '844 Patent invention (claim 7) further calls for the caching of portions of root images that have been accessed by at least one compute node, and the '282 Patent invention (claim 1) further calls for a union block device for interfacing between the compute node and the storage units to distribute the application environment, as shown below.

| 7. A method for providing data to a plurality of compute nodes, comprising: | 1. A system for distributing an application environment comprising: |
|---|---|
| storing blocks of a root image of said compute nodes on a first storage unit; | a compute node comprising a computer system; |
| storing leaf images for respective compute nodes on respective second storage units, said leaf images including only additional data blocks not previously contained in said root image and changes made by respective compute nodes to the blocks of the root image, wherein said leaf images of respective compute nodes do not include blocks of said root image that are unchanged by respective compute nodes; and | a first storage unit for storing blocks of a root image of the compute node, wherein the first storage unit comprises a first non-volatile memory, wherein the root image comprises a computer program, wherein the blocks comprise sections of data, and wherein a file of the root image comprises at least one block; |
| caching blocks of said root image that have been accessed by at least one of said compute nodes in a cache memory. | a second storage unit for storing a leaf image, the leaf image comprising new data blocks and changes to the blocks of the root image, wherein the second storage unit comprises a second non-volatile memory; and |
| | a union block device for interfacing between the compute node and the first and second storage units to distribute the application environment to the compute node, wherein the union block device comprises a driver, wherein the union block device creates the application environment by merging the blocks of the root image stored on the first storage unit with the blocks of the leaf image stored on the second storage unit; the union block device comprises a low-level driver for interfacing between the first and second storage units and the file system of the compute node; and the union block device, upon receiving a write request from the compute node for a sector X, creates an appropriate persistent mapping for sector X. |

---

[6] The '844 Patent is a continuation-in-part of the '282 Patent.

A "root image" as used in the '844 and '282 Patents is a "read-only base image" of the application environment for the compute nodes. *E.g.*, Dkt. 1-1 at 2:13-14. Using Figure 3A of the '844 Patent as an example, data blocks of a root image and leaf images are stored on separate storage devices, with previously accessed root image data blocks being stored in a cache. When a compute node sends a read request, it either receives data from the cache or from a storage unit. *Id*. at 8:5-12. If the compute node accesses data not previously cached, the cache will be updated to include that data. *Id*. at 8:32-35. The merging of the root image and leaf image to create the application environment can then be performed, resulting in an application environment that appears to the compute node as one cohesive image. *Id.* at 8:13-21.

The specifications describe how the claimed invention provides a concrete improvement over existing methods for cluster computing. It explains as problems that the creation of "a boot image on the fly involves copying the entire contents of the master image," which "will result in a large bring-up time" for a compute node. Dkt. 1-1 at 1:54-58. Pre-creating boot images for each server in a computing cluster, has improved bring-up time, but "since one often does not know in advance how many servers will ever be booted, this scheme may result in wasted disk space." *Id*. at 1:59-63. Further, updating copies of the boot image across the compute nodes "is cumbersome, as it means updating a number of copies of the boot image." *Id*. at 1:64-67. Once booted, there are further inefficiencies, resulting in redundancies in compute node operations and wasted CPU resources, disk space, and bandwidth. *Id*. at 2:1-12.

The inventions, as recited in claim 7 of the '844 Patent and claim 1 of the '282 Patent, solve these prior art problems by providing a "specific improvement to the way computers operate," as embodied in the root-leaf system of application environment storage. *See Enfish*, 822 F.3d at 1336 (finding patentable a patent designed to "improve the way a computer stores and

retrieves data in memory"). The claimed invention allows for updating a boot image "on the fly"

without the delays that would normally result.

> By utilizing a root-leaf system of application environment storage, embodiments of the present disclosure allow creation of boot images on the fly without significantly diminishing bring-up time. This is due to the fact that creating a new boot image does not require copying the contents of the root image …. Bring up time, and access time in general, can be further improved by caching commonly accessed the portions of the root image. Moreover, updating the boot image for the entire cluster simply involves updating the root image. Additionally, because of the commonality of the root image and the fact that its contents are not directly changed, certain operations performed on the root image (e.g., indexing) only need to be performed once by one compute node.

Dkt. 1-1 at 2:49-3:2. These improvements are directly tied to the invention, which resolves prior

art problems by storing a single root image, and only storing leaf images of data not contained in

the root image, as well as caching portions of the root image ('844 Patent) and using a union block

device for interfacing between the compute node and the storage units to distribute the application

environment and merge blocks of the root image with blocks of the leaf image ('282 Patent).

Southwest attempts to oversimplify the claimed invention by describing it as directed to

the "abstract idea of organizing and storing information" using a "root-leaf structure." This is the

precise sort of oversimplification the Federal Circuit has repeatedly rejected. *See supra, Contour*

*IP Holding*; *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016) (same).

Indeed, the patents describe that the inventions are not just the "root-leaf" structure, but also the

use of root image caching and indexing ('844 Patent) and union block device merging techniques

('282 Patent) for distributed application management. Southwest's cited cases to support its

argument that the '844 and '282 Patents are allegedly directed towards "central record" keeping

are readily distinguishable.[7] The inventions of the '844 and '282 Patents are instead more akin to

---

[7] *See Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1147 (Fed. Cir. 2016) (finding the claims of the patents at issue were "devoid of any reference to a computer or any other physical component"); *Intell. Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1327 (Fed. Cir. 2017)

that involved in *Visual Memory*.[8] In *Visual Memory*, the Federal Circuit held that an improved memory system that "obviate[d] the need to design a separate memory system for each type of processor, which proved to be costly and inefficient, and, at the same time, avoid[ed] the performance problems of prior art memory systems" was patent-eligible. *Id*. at 1259. So too, here, the '844 and '282 Patent inventions provide a solution for cluster computing using the root-leaf system with a cache for repeatedly requested data, avoiding the problems of prior art solutions.

      b.    <u>The '844 Patent and '282 Patent Recite an Inventive Concept.</u>

This Court need not reach step 2 of the Alice test given that the '844 and '282 Patents are not directed to an abstract idea. Regardless, the '844 and '282 Patents capture inventive concepts that would make them patent-eligible under step two, even if Southwest had met its burden under step one. *See supra*, Section III.3.a; *see also supra*, *CosmoKey*. The claims of the '844 and '282 Patents are analogous to those found to contain an inventive concept in *Amdocs*,[9] where the Federal Circuit expressly noted that even though a claim contained "conventional components," it nevertheless "involves limitations that when considered individually and as an ordered combination recite an inventive concept through the system's distributed architecture." *Id*. at 1302. To the extent the '844 and '282 Patent claims even use "standard" methods, they further recite inventive concept of using a root-leaf structure and block-level distributed application management. Additionally, the specific improvements that result from this inventive concept are

---

(claims were not directed to improvement in computer function, but rather simply the use of an index for performing search); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (no improvement claimed); *In re TLI Commc'ns*, 823 F.3d at 611 (claims of asserted patent were not directed to an improvement in digital imaging); *Versata Software, Inc. v. NetBrain Techs., Inc.*, No. 13-676-LPS-CJB, 2015 WL 5768938, at *7 (D. Del. Sept. 30, 2015) (hierarchical representation of information claimed not analogous to '844 Patent's specific implementation of system of application environment storage that provides technical improvement over prior art).
[8] *Visual Memory.[8] LLC v. NVIDIA Corp.*, 867 F.3d 1253 (Fed. Cir. 2017).
[9] *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1302 (Fed. Cir. 2016).

similar to those that prohibited dismissal in *Berkheimer*. *See id.*, 881 F.3d at 1369 (finding that an "inventive feature that stores parsed data in a purportedly unconventional manner" and the resulting benefits of the elimination of redundancies and storage requirements, improvements in system efficiency, and the ability to propagate a single edit throughout multiple documents presented a factual dispute concerning whether the invention was routine and conventional). Southwest's arguments regarding the "conventional" nature of the limitations or the ordered combination of the claims suggest, at most, a fact dispute that cannot be resolved on the pleadings.[10] *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018); *see also supra, Cooperative Ent.*

### B. IV is Not Precluded From Obtaining Pre-Suit Damages.

Southwest's arguments regarding marking are unavailing and its Motion should be denied. In the SAC, IV asserts that it does not "make or sell products and thus ha[s] no products to mark." Dkt. 64, ¶ 224. While IV acknowledges that it has entered into license agreements, none of those agreements were to produce patented articles under the Asserted Patents, and none of the licensees agreed or admitted that they infringed those patents. *Id.* at ¶¶ 226-227. Further, IV's SAC alleges infringement for **_only_** method claims for four of the ten Asserted Patents (the '844, '722, '326, and '582 Patents).[11] "The law is clear that the notice provisions of § 287 do not apply where the patent is directed to a process or method." *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*,

---

[10] Southwest's reliance on *Content Extraction* is misplaced. Mot. at 14. There, the claim was directed to the "use of a generic scanner and computer to perform well-understood, routine, and conventional activities commonly used in industry," and no improvement or benefit over prior art was asserted. *See Content Extraction*, 776 F.3d at 1348. The claims in *Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307 (Fed. Cir. 2016) were directed to the simple filtering of emails and did not improve computer functioning. Here, in contrast, the '844 and '282 Patent claims provide a concrete technical improvement over prior art systems for distributed computing systems.

[11] IV dismissed without prejudice its claim regarding the '841 Patent on October 8, 2025. Dkt. 70. The '841 Patent remains pending in *Intellectual Ventures II LLC v. Southwest Airlines Co.*, Case No. 7-25-cv-00252.

559 F.3d 1308, 1316-17 (Fed. Cir. 2009). Southwest concedes this issue in its Motion by not substantively addressing it. Dkt. 68 at 17. For the other six patents, Southwest's argument fails because it bears the "initial burden of production to articulate the products it believes are unmarked 'patented articles' subject to [35 U.S.C.] § 287." *Arctic Cat Inc. v. Bombardier Recreational Prods., Inc.*, 876 F.3d 1350, 1366 (Fed. Cir. 2017). Even assuming those patents are subject to § 287, Southwest has not identified any ***actual accused*** products that it "***believes*** practice the patent." *See Arctic Cat*, 876 F.3d at 1368 (emphasis added). Southwest argues that "IV's own infringement theories" reflected in "[i]ts charts [of] the asserted patents against open-source software – such as Kubernetes, Docker, Spark, Kafka, and Hadoop – systems supplied to Southwest by IV's own licensees, AWS and IBM/OpenShift, without patent markings. By IV's own theory, those licensees are distributing practicing products without patent markings." Dkt. 68 at 17. Southwest makes a similar argument regarding "the two aircraft Wi-Fi patents" which it asserts are also licensed. *Id*. Southwest's purported *gotcha* is unavailing because IV ***expressly excluded licensed products*** from the products or systems it is accusing – indeed, IV specifically identified AWS and IBM/OpenShift as products it does not accuse. *See, e.g.*, Dkt. 64-20 at 2, n.1; Dkt. 64-22 at 2, n.1; Dkt. 64-24 at 2, n.1; *see also* Dkts. 64-8 – 13 at 2, n.1; Dkt. 64-9 at 2, n.1; Dkt. 64-10 at 2, n.1; Dkt. 64-11 at 2, n.1; Dkt. 64-12 at 2, n.1; Dkt. 64-13 at 2, n.1; Dkt. 64-23 at 2, n.1. Instead, IV accuses Southwest's on-premises and unlicensed cloud implementations of the accused technologies. Southwest's transition to public cloud implementations, such as AWS and IBM/OpenShift, is incomplete as shown in the SAC's claim charts. *See, e.g.*, Dkt. 64 at ¶¶ 59-60 & Dkt. 64-8 at 2. Because Southwest failed to identify any "specific unmarked products which [Southwest] ***believes*** practice the patent" other than licensed products ***expressly not accused***, Southwest's arguments fail. *Arctic Cat*, 876 F.3d at 1368. Thus, Southwest failed to meet its initial burden.

**C.**    **IV Plausibly and Sufficiently Pled Infringing Uses for the Cloud Patents.**

IV pled sufficient facts of Southwest's direct infringement for the Cloud Patents.[12] Specifically, IV alleges Southwest systems and services use each of Docker, Kafka, Kubernetes, Spark, and Hadoop open-source technologies that infringe at least one claim of the Cloud Patents, and IV has identified Southwest engineers who work with each technology. *See generally* Dkts. 64-8 at 2, 64-9 at 2, 64-10 at 2, 64-13 at 2, 64-20 at 2, 64-22 at 2, 64-24 at 2. In support of its allegations, IV's SAC included element-by-element claim charts showing how Southwest infringes those technologies. *See, generally*, Dkts. 64-8, 64-9, 64-10, 64-13, 64-20, 64-22, 64-24. IV pled plausible infringement based on non-licensed use for each Cloud Patent. Specifically, IV's claim charts identify specific evidence that Southwest uses non-licensed private clouds. *See, e.g.,* Dkt. 64-8 at 2 ("Southwest [] is investing in cloud technology and has 'moved about 50% of its technology' to the [public] cloud and has indicated cloud migration is one of its areas of focus for 2024 and beyond"). This is sufficient because "an adequate complaint need only contain 'some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim'" *AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 35 (Fed. Cir. 2024) ).

Southwest does not dispute it uses (or has used) each respective technology. It instead argues IV accuses "unspecified 'services and technologies.'" Dkt. 68 at 18. This is incorrect; IV has identified Southwest's products and services that *use each respective accused technology*. *See AlexSam*, 119 F.4th at 35 ("it is enough that a complaint place the alleged infringer on notice of what activity … is being accused of infringement"). Further, the Southwest applications and products that use the accused technologies are not public, yet Southwest demands that IV plead knowledge of these applications and products. "[Southwest] cannot shield itself from a complaint

---

[12] For purposes of this filing, the "Cloud Patents" refers to the '844, '722, '785, '584, '080, '282, and '582 Patents. Southwest's Motion does not address the remaining Asserted Patents.

... by operating in such secrecy that the filing of a complaint itself is impossible." *Raytheon Co. v. Cray, Inc.*, No. 2:16-CV-00423-JRG-RSP, 2017 WL 1362700, at *4 (E.D. Tex. Mar. 13, 2017) The accused technologies are cloud technologies, and it is IV's understanding that Southwest does not make specific details of their implementation public. Thus, Southwest's demand places a burden on IV well beyond any pleading requirements. The Eastern District of Texas recently addressed similar arguments from an alleged infringer in *Intellectual Ventures I LLC and Intellectual Ventures II LLC v. American Airlines, Inc.*, Civil Action No. 4:24-cv-980, August 19, 2025. (Ex. 2.) The Eastern District held that despite defendant's arguments that "the Complaint does not identify unauthorized use of the Cloud Computing Patents," IV had "stated plausible claims for relief under Rule 12(b)(6). Dismissal is unwarranted." (*Id*. at .4)

The cases upon which Southwest relies, *i.e.*, *Carpenter*,[13] *OnStar*,[14] and *Celgard*[15] (Dkt. 68 at 19), do not support Southwest's position. In *Carpenter*, the Federal Circuit found that the plaintiff's statement that the defendant's making, selling, and using of "electric motors," without more details, did not satisfy its pleading burden. *Id*. at 936 ("[i]t is not enough to say 'you infringe my patent' [and] that is all that is alleged in [plaintiff's] complaint."). Here, IV provided detailed claim charts including element-by-element analyses with supporting descriptions and citations to evidence. *OnStar* is also inapposite because IV "plausibly demonstrate[ed] actual use by [Southwest]" of the accused cloud technologies, which Southwest does not dispute. In *OnStar*, by contrast, plaintiff merely accused all OnStar products of infringement and included analysis of a non-party application without "offer[ing] any explanation of the relationship between OnStar and

---

[13] *Addiction and Detoxification Institute LLC v. Carpenter*, 620 F. App'x. 934 (Fed. Cir. 2015).
[14] *WirelessWerx IP LLC v. OnStar, LLC*, No. 2:23-cv-11501-MAG-APP, 2024 WL 1607018 (E.D. Mich. Apr. 12, 2024).
[15] *Celgard, LLC v. Shenzhen Senior Technology Material Co. (US) Research Institute*, No. 19-cv-05784-JST, 2020 WL 7392909 (N.D. Cal. July 23, 2020)

[the third-party and its application]." *OnStar*, 2024 WL 1607018, at *6. *Celgard* is likewise inapplicable because the specific products and services that use the accused cloud technologies are not publicly known. *See Celanese Int'l Corp. v. Anhui Jinhe Indus. Co., Ltd.*, No. 20-1775-LPS, 2021 WL 7209494, at *4 (D. Del. Dec. 10, 2021) ("Plaintiffs cannot be charged with knowing, at the time they drafted their Complaint, non-public information they could only obtain after filing suit and obtaining discovery"). Southwest's reliance on *JVC Kenwood*[16] similarly is misplaced because this is not a situation where a patentee licensed its patents through "patent pools" as part of an "extensive licensing program." Dkt. 68 at 19-20.

Southwest argues IV's direct infringement allegations are "rendered implausible" by IV's acknowledgement that certain entities may be licensed to the Cloud Patents (Dkt. 68 at 19), but IV pled sufficient plausibility of infringement at least through Southwest's use of private clouds—***a fact that Southwest tellingly never denies*** in its Motion. Further, Southwest is on notice of the accused infringing activity because IV is accusing all of Southwest's non-licensed implementations of Docker, Kafka, Kubernetes, Spark, and Hadoop as infringing the Cloud Patents. If it is a licensed implementation of those technologies, then it is not accused. Licensed implementations are expressly excluded from IV's allegations of infringement. *Supra* at 17. Further, Southwest's cursory argument to dismiss IV's enhanced damages claims fails because it is premised entirely on whether IV plausibly pled direct infringement of the Cloud Patents. Dkt. 68 at 20, n.4. As described above, IV sufficiently pled Southwest infringed the Cloud Patents.

## IV.    CONCLUSION

For the foregoing reasons, Southwest's Motion should be denied in its entirety.

---

[16] *JVC Kenwood Corp. v. Nero, Inc.*, 797 F.3d 1039, 1045 (Fed. Cir. 2015).

Dated: October 14, 2025

RESPECTFULLY SUBMITTED,

By: */s/ Jonathan K. Waldrop*
    Jonathan K. Waldrop (CA Bar No. 297903)
    (Admitted in this District)
    jwaldrop@kasowitz.com
    Marcus A. Barber (CA Bar No. 307361)
    (Admitted in this District)
    mbarber@kasowitz.com
    John W. Downing (CA Bar No. 252850)
    (Admitted in this District)
    jdowning@kasowitz.com
    Heather S. Kim (CA Bar No. 277686)
    (Admitted in this District)
    hkim@kasowitz.com
    ThucMinh Nguyen (CA Bar No. 304382)
    (Admitted in this District)
    tnguyen@kasowitz.com
    Jonathan H. Hicks (CA Bar No. 274634)
    (Admitted in this District)
    jhicks@kasowitz.com
    **KASOWITZ LLP**
    101 California Street, Suite 3950
    San Francisco, California 94111
    Telephone: (415) 421-6140
    Facsimile: (415) 358-4408

    Jeceaca An (NY Bar No. 5849898)
    (Admitted in this District)
    jan@kasowitz.com
    **KASOWITZ LLP**
    1633 Broadway
    New York, NY 10019
    Telephone: (212) 506-1700
    Facsimile: (212) 506-1800

    Paul G. Williams (GA Bar No. 764925)
    (Admitted in this District)
    pwilliams@kasowitz.com
    **KASOWITZ LLP**
    1230 Peachtree Street, N.E., Suite 2445
    Atlanta, Georgia 30309
    Telephone: (404) 260-6102
    Facsimile: (404) 393-9752

    Mark D. Siegmund (TX Bar No. 24117055)
    msiegmund@cjsjlaw.com
    **CHERRY JOHNSON SIEGMUND
    JAMES PLLC**

21

7901 Fish Pond Rd., 2nd Floor
Waco, Texas 76710
Telephone: 254-732-2242
Facsimile: 866-627-3509

***Attorneys for Plaintiffs***
***INTELLECTUAL VENTURES I LLC***
***INTELLECTUAL VENTURES II LLC***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing instrument was served or delivered electronically to all counsel of record on this 14th day of October, 2025, via the Court's CM/ECF system.

*/s/ Jonathan K. Waldrop*
Jonathan K. Waldrop
