**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| **INTELLECTUAL VENTURES I, LLC and** | § | |
| **INTELLECTUAL VENTURES II LLC,** | § | |
| | § | |
| *Plaintiffs,* | § | **Civil Action No. 7:24-cv-00277-ADA** |
| | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| **SOUTHWEST AIRLINES CO.,** | § | |
| | § | |
| *Defendant.* | § | |

---

**DEFENDANT SOUTHWEST AIRLINES CO.'S**
**REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

---

# TABLE OF CONTENTS

I.    INVALIDITY UNDER § 101. ................................................................................ 1

   A.  Count VI: The '582 Patent Claims a Basic Scheduling Idea—Not a Computer-Functional Improvement. ............................................................................. 1

     1.  *Alice* Step One: The Claims Are Directed to an Abstract Idea. ............................ 1

     2.  *Alice* Step Two: No Inventive Concept Appears in the Elements or Their Combination. ......................................................................................... 2

   B.  Count IX: The '584 Patent Claims a Business-Driven Remote Hosting and Monitoring Idea Using Conventional Components. ........................................ 2

     1.  *Alice* Step One: The Claims Are Directed to Remote Hosting and Monitoring. ......................................................................................... 2

     2.  *Alice* Step Two: Nothing Recited Saves the Claims From Abstraction. .................. 4

   C.  The '844 and '282 Patents Claim Nothing More Than an Abstract Idea for Organizing and Storing Data. ................................................................... 5

     1.  *Alice* Step One: The claims Are Directed to Organizing and Storing Information, Not to a Specific Technological Improvement. ............................... 5

     2.  Alice Step Two: The Claims Recite No Inventive Concept. .................................. 7

II.   PRE-SUIT DAMAGES ...................................................................................... 8

III.  DIRECT INFRINGEMENT ................................................................................ 9

IV.   CONCLUSION ................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**     **Page(s)**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
   882 F.3d 1121 (Fed. Cir. 2018)..................................................................................2, 4

*Affinity Labs of Tex., LLC v. DIRECTV, LLC*,
   838 F.3d 1253 (Fed. Cir. 2016)..................................................................................1, 3

*Appistry, Inc. v. Amazon.com, Inc.*,
   2015 WL 4210890 (W.D. Wash. July 9, 2015), *aff'd*, 676 F. App'x 1007
   (Fed. Cir. 2017)..............................................................................................................1

*Berkheimer v. HP Inc.*,
   881 F.3d 1360 (Fed. Cir. 2018)...............................................................................2, 4, 7

*BSG Tech LLC v. BuySeasons, Inc.*,
   899 F.3d 1281 (Fed. Cir. 2018)..................................................................................6, 7

*ChargePoint, Inc. v. SemaConnect, Inc.*,
   920 F.3d 759 (Fed. Cir. 2019).......................................................................................7

*Content Extraction & Transmission LLC v. Wells Fargo Bank*,
   776 F.3d 1343 (Fed. Cir. 2014).....................................................................................5

*Customedia Techs., LLC v. DISH Network Corp.*,
   951 F.3d 1359 (Fed. Cir. 2020)..................................................................................2, 4

*Data Health Partners, Inc. v. Teladoc Health, Inc.*,
   734 F.Supp.3d 315 (D. Del. 2024)................................................................................3

*e-Watch Inc. v. Avigilon Corp.*,
   2013 WL 5231521 (S.D. Tex. Sept. 13, 2013) ............................................................8

*Elec. Power Grp., LLC v. Alstom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016)..................................................................................3, 5

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016)..................................................................................2, 3

*Erie Indemnity Co. v. Berkshire Hathaway Inc.*,
   850 F.3d 1328–29 (Fed. Cir. 2017)...............................................................................7

*Express Mobile, Inc. v. DreamHost LLC*,
   2021 WL 3772040 (D. Del. Aug. 25, 2021) .................................................................8

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
   850 F.3d 1332 (Fed. Cir. 2017)......................................................................................6

*Intellectual Ventures I LLC v. Symantec Corp.*,
838 F.3d 1307 (Fed. Cir. 2016)...........................................................................1

*JVC Kenwood Corp. v. Nero, Inc.*,
797 F.3d 1039 (Fed. Cir. 2015).........................................................................10

*Lans v. Digital Equip. Corp.*,
252 F.3d 1320 (Fed. Cir. 2001)...........................................................................9

*Lubby Holdings LLC v. Chung*,
11 F.4th 1355 (Fed. Cir. 2021) ...........................................................................8

*Nextpoint, Inc. v. Hewlett-Packard Co.*,
227 F.Supp.3d 963 (N.D. Ill. 2016), *aff'd,* 680 F. App'x 1009 (Fed. Cir. 2017) ....................3

*Sanderling Mgmt. Ltd. v. Snap Inc.*,
65 F.4th 698 (Fed. Cir. 2023) .............................................................................1

*SAP Am., Inc. v. InvestPic, LLC*,
898 F.3d 1161 (Fed. Cir. 2018)........................................................................2, 4

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
873 F.3d 905 (Fed. Cir. 2017).............................................................................7

*Symantec Corp. v. Zscaler*,
838 F.3d 1319 (Fed. Cir. 2016)............................................................................7

*TaKaDu Ltd. v. Innovyze, Inc.*,
2022 WL 684409 (D. Del. Mar. 8, 2022) ...............................................................3

*In re TLI Commc'ns LLC Patent Litig.*,
823 F.3d 607 (Fed. Cir. 2016)..........................................................................5, 7

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
874 F.3d 1329 (Fed. Cir. 2017).........................................................................3, 4

*Visual Memory, LLC v. NVIDIA Corp.*,
867 F.3d 1253 (Fed. Cir. 2017)............................................................................6

*WirelessWerx IP LLC v. OnStar, LLC*,
2024 WL 1607018 (E.D. Mich. Apr. 12, 2024).......................................................9

*Yodlee, Inc. v. Plaid Techs. Inc.*,
2016 WL 2982503, at *18 (D. Del. May 23, 2016), *R. & R. adopted*,
2017 WL 385039 ...............................................................................................1

# I.    INVALIDITY UNDER § 101.

In evaluating § 101, the Court should treat four claims as representative—claim 1 of the '582 Patent, claim 1 of the '584 Patent, claim 7 of the '844 Patent, and claim 1 of the '282 Patent— because the Complaint charted those claims as representative (Dkt. 64), Southwest's motion addressed them as such, and IV has not disputed representativeness. *Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 702 (Fed. Cir. 2023); *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1256 n.1 (Fed. Cir. 2016).

## A. Count VI: The '582 Patent Claims a Basic Scheduling Idea—Not a Computer-Functional Improvement.

### 1. *Alice* Step One: The Claims Are Directed to an Abstract Idea.

IV argues claim 1 "recite[s] a specific technological solution" that "improves data processing" through parallelization. Dkt. 77 at 2–3. But the claim's core steps—(i) partitioning a preexisting file, (ii) distributing "descriptions" of all partitions to each processor, (iii) executing subtasks in parallel, (iv) repeating on a first-come, first-served (FCFS) basis, and (v) combining outputs—are conventional distributed-processing functions. '582 Patent at 1:33–38. The only asserted difference between the claimed invention and the prior art is repeating on a FCFS basis, which the prosecution history characterizes as producing load sharing "as a byproduct" and implemented "without a special load process." Dkt. 68-2 at 2–3. That queueing policy is an abstract organizing principle, not a computer-functional improvement. *See, e.g., Yodlee, Inc. v. Plaid Techs. Inc.*, 2016 WL 2982503, at *18 (D. Del. May 23, 2016), *R. & R. adopted*, 2017 WL 385039; *Appistry, Inc. v. Amazon.com, Inc.*, 2015 WL 4210890, at *2 (W.D. Wash. July 9, 2015), *aff'd*, 676 F. App'x 1007 (Fed. Cir. 2017). In claiming a system that uses the abstract idea, claim 1 recites no specific purported *technological* improvement—no algorithm, data structure, protocol, or architectural constraint that changes computer operation. *See Affinity*, 838 F.3d at 1258–59; *Intellectual Ventures I LLC v. Symantec*

*Corp.*, 838 F.3d 1307, 1319 (Fed. Cir. 2016). IV's reliance on *Enfish* is thus misplaced, as it involved claims reciting a specific data structure that changed how computers operate, while nothing comparable appears here. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336–39 (Fed. Cir. 2016).

### 2. *Alice* Step Two: No Inventive Concept Appears in the Elements or Their Combination.

IV identifies no *claim-recited* mechanism that could supply "something more." The specification confirms that partitioning, distributing task information, executing in parallel, and aggregating results were all well-understood, routine, and conventional. '582 Patent at 1:33–38. FCFS itself is the abstract idea and—per the prosecution remarks—only a "byproduct" of ordinary task pickup. Dkt. 68-2 at 2–3. Implementing that policy on generic processors and memory is not inventive. *See SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1170 (Fed. Cir. 2018); *Customedia Techs., LLC v. DISH Network Corp.*, 951 F.3d 1359, 1366 (Fed. Cir. 2020).

IV's *Berkheimer* argument fails because a factual dispute must concern whether the claimed arrangement was not "well-understood, routine, and conventional." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368–69 (Fed. Cir. 2018); *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125–27 (Fed. Cir. 2018). IV points to no non-generic element or configuration beyond the abstract scheduling concept itself. The intrinsic record—both specification and prosecution history—admits that parallel execution and load balancing, i.e., everything claimed apart from the abstract idea, were well known at filing. '582 Patent at 1:11–38; Dkt. 68-2 at 2–3. On this record, eligibility is resolved as a matter of law.

## B. Count IX: The '584 Patent Claims a Business-Driven Remote Hosting and Monitoring Idea Using Conventional Components.

### 1. *Alice* Step One: The Claims Are Directed to Remote Hosting and Monitoring.

IV says claim 1 solves technical problems in multi-cluster computing through "customizable configurations," gateways that "isolate" traffic, and a monitoring system. Dkt. 77 at 12–16. But the

claim recites only endpoints—two clusters "in configurations" reachable via a "public communications network," connected to a "private communications network" through gateways, with "a monitoring system to monitor … for communications problems," and "communications … isolated"—and no *how*: no algorithm, protocol, data structure, or architectural constraint that changes computer operation. '584 patent at cl. 1 (11:8–45). The specification confirms these are generic building blocks used in ordinary ways: "public" is the Internet; "private" is an intranet over established protocols; clusters are ordinary compute/network/storage groupings; "configurations" reflect routine trade-offs (e.g., high availability). '584 at 3:8–10; 4:23–27; 7:41–52; 1:30–31; 6:62–64. Describing desired results rather than concrete means is abstraction. *See Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1355–56 (Fed. Cir. 2016); *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339–40 (Fed. Cir. 2017). *Enfish* does not help IV because the claims reciting a specific new data structure that changed how computers operate—nothing comparable here. *See Enfish*, 822 F.3d at 1336–39; *Affinity*, 838 F.3d at 1258–59 (Fed. Cir. 2016).

IV's reliance on *TaKaDu* and *Data Health Partners* (Dkt. 77 at 16) is misplaced. 2022 WL 684409, at *5 (D. Del. Mar. 8, 2022); 734 F.Supp.3d 315, 326 (D. Del. 2024). Those cases support that **specific analytical techniques** may survive *Alice*; claim 1 does not present any. As the Federal Circuit has emphasized, there is an "important common-sense distinction between ends sought and particular means of achieving them, between desired results (functions) and particular ways of performing them." *Electric Power Grp*, 830 F.3d at 1356. Claim 1 falls into the former category. It does not describe *how* to monitor cluster systems or isolate communications via gateways—it merely claims the result of doing so. Courts have rejected analogous claims as abstract. *See Nextpoint, Inc. v. Hewlett-Packard Co.*, 227 F.Supp.3d 963 (N.D. Ill. 2016), *aff'd,* 680 F. App'x

1009 (Fed. Cir. 2017) (invalidating claims directed to hosting and providing access to electronic discovery tools in a cloud environment under *Alice*).

Claim 1 includes no limitations that purport to improve ***how*** the claimed system achieves customization, monitoring, or communication isolation. IV's own explanations confirm that the patent claims a desired business outcome—outsourcing routine cluster management—without disclosing any particular technical means for doing so. Claim 1 thus fails *Alice* step one.

### 2. *Alice* Step Two: Nothing Recited Saves the Claims From Abstraction.

IV identifies no *claim-recited* mechanism that could supply "something more." The intrinsic record ties the supposed improvements to conventional tools and arrangements: node monitors implemented with IPMI and a main monitor receiving SNMP alerts; gateways realized with generic hardware/software applying a standard rule set; public/private networks that are the Internet/intranet; clusters that are ordinary groupings. '584 at 5:42–46; 7:53–63; 8:39–46; 3:8–10; 4:23–27; 7:41–52. Claim 1 contains none of the particulars (no gateway mechanism, no monitoring algorithm or telemetry protocol, no novel topology) that could render the combination non-conventional. Implementing result-level goals with ordinary components is not an inventive concept. *See SAP Am.*, 898 F.3d at 1170; *Customedia*, 951 F.3d at 1366; *Two-Way Media*, 874 F.3d at 1339–40. IV's *Berkheimer/Aatrix* point fails because any dispute must concern whether the claimed arrangement is not "well-understood, routine, and conventional," and IV ties no purportedly unconventional software to any claim-recited algorithm, protocol, data structure, or architecture. *See Berkheimer*, 881 F.3d at 1368–69; *Aatrix*, 882 F.3d at 1125–27.[1] The specification confirms the

---

[1] IV's reliance on *Berkheimer* is misplaced because the supposed improvements provided by the monitoring system and gateway are not captured by claim 1. *See Berkheimer*, 881 F.3d at 1369 ("The improvements in the specifications, ***to the extent they are captured in the claims***, [may] create a factual dispute regarding whether the invention describes well-understood, routine, and conventional activities . . . .").

components are standard. Patent eligibility is a legal question that can—and should—be resolved at the Rule 12 stage when the claims recite nothing more than abstract ideas implemented with conventional tools. Claim 1 fails *Alice* step two.

**C. The '844 and '282 Patents Claim Nothing More Than an Abstract Idea for Organizing and Storing Data.**

    **1. *Alice* Step One: The claims Are Directed to Organizing and Storing Information, Not to a Specific Technological Improvement.**

Both the '844 and '282 Patents describe the same basic concept—organizing and storing different types of data in recited locations through functional, results-oriented steps—rather than claiming any specific improvement in computer technology. Claim 7 of the '844 Patent recites storing blocks of a "root image" on a first storage unit, storing "leaf images" on second units, and caching accessed blocks of the root image. Claim 1 of the '282 Patent similarly recites a compute node, a first and second storage unit for "root" and "leaf" images, and a "union block device" that merges those images to create an application environment. Neither claim specifies how these steps are performed. They simply identify the desired results—storing, caching, and merging—without any algorithm, data structure, or unconventional mechanism for carrying them out. The claims thus fall squarely within the category of abstract information-organization concepts repeatedly held ineligible under § 101. *See, e.g., In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016); *Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1348 (Fed. Cir. 2014); *Electric Power Grp.*, 830 F.3d at 1351.

IV's response does not alter that conclusion. Its opposition seeks to "import eligibility" by focusing on the type of data (root and leaf images) and invoking unclaimed disclosure such as Figure 3A and "indexing." But claim 7 does not recite any of the additional steps IV highlights from Figure 3A (e.g., items 324–345) or any indexing functionality at all. Unclaimed features cannot confer eligibility. *See Electric Power Grp.*, 830 F.3d at 1351. When "stripped of excess verbiage,"

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1339 (Fed. Cir. 2017), the claims merely require storing one category of data (root image) in one place, another category (leaf image) in another place, and optionally caching or merging that data. Those are the same kinds of generalized data-management operations repeatedly found abstract, regardless of the data type, storage environment, or hardware used.

IV further contends that the claimed "root-leaf structure," caching, and "union block device" improve performance. But both patents concede that these very techniques were well known and used for the same reasons IV now touts. The specifications cite Nguyen et al., "Branching Store File System," U.S. App. No. 11/026,622 (Dec. 30, 2004), describing root and leaf images that allow each compute node to run its own instance and create "boot images on the fly without severely diminishing bring-up time." '844 Patent at 2:14–25; '282 Patent at 1:62–2:11. They likewise acknowledge that caching and merging were conventional and yielded predictable performance benefits. '844 Patent at 6:38–7:17. Because these advantages arise from applying known techniques in their expected manner, they cannot transform an abstract idea into a technological improvement. *See BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1288 (Fed. Cir. 2018) (holding that benefits "that flow from performing an abstract idea in conjunction with a well-known database structure" do not render claims patent eligible). At most, the patents describe the use of familiar data-partitioning and caching strategies for their known benefits—precisely the type of conceptual data organization *Alice* deems abstract.[2]

---

[2] IV's reliance on *Virtual Memory* does not help. Dkt. 77 at 19. *Visual Memory* involved a memory system that, unlike the prior art, adjusted cache allocation based on processor type, directly improving hardware functionality. *Visual Memory, LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1259 (Fed. Cir. 2017). Here, the claims do not recite how any hardware operates; they merely recite where to store different types of data.

### 2. Alice Step Two: The Claims Recite No Inventive Concept.

At step two, IV invokes *Berkheimer* to suggest a factual dispute over whether the claimed elements were routine and conventional. But *Berkheimer* does not apply when the intrinsic record admits conventionality. *See TLI*, 823 F.3d at 612; *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 912 (Fed. Cir. 2017). Here, the specifications leave no doubt that the claims rely entirely on standard computer components—storage units, caches, compute nodes, and drivers—operating in their ordinary capacities, and that the asserted performance benefits come from well-known techniques used in their routine ways. The '844 Patent expressly acknowledges that "root" and "leaf" images, "caching," and "merging" were existing practices. *See, e.g.*, '844 Patent at 2:6–11, 2:14–25, 6:38–7:17. The '282 Patent confirms the same. *See* '282 Patent at 1:62–2:11. Neither patent discloses or claims any algorithm, architecture, or particular implementation that departs from conventional approaches. As in cases such as *Symantec Corp. v. Zscaler*, 838 F.3d 1319 (Fed. Cir. 2016), and *Erie Indemnity Co. v. Berkshire Hathaway Inc.*, 850 F.3d 1328–29 (Fed. Cir. 2017), the claims recite nothing "significantly more" than an abstract idea executed on generic hardware.

IV's remaining arguments do not create a factual dispute. Its reliance on unclaimed Figure 3A steps or "indexing" fails because those features are not in the claims.[3] Its references to alleged "speed" improvements fail because those are the predictable results of applying known caching and merging concepts on conventional systems. And *Berkheimer* does not prevent dismissal where, as here, the patents themselves establish that each element and their combination were conventional.

---

[3] IV also argues that the '844 and '282 Patents solve prior art problems relating to "redundancies in compute node operations[.]" Dkt. 77 at 18. However, those benefits are tied to indexing—an abstract idea. *See BSG Tech*, 899 F.3d at 1286, 1291. Moreover, "indexing" is *not* reflected in the claims and cannot be relied upon as a technical improvement. *See ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 769 (Fed. Cir. 2019) ("[T]he specification cannot be used to import details from the specification if those details are not claimed.").

The claims simply arrange familiar components to achieve a familiar result—organizing, storing, and accessing data more efficiently. That is not an inventive concept under § 101. The Court should dismiss Counts I and XI because the claims of the '844 and '282 Patents are directed to abstract data-organization ideas and recite nothing inventive beyond conventional storage, caching, and merging operations on generic computer hardware.

## II.    PRE-SUIT DAMAGES

IV does not dispute that its Complaint fails to allege compliance with the patent marking statute. That omission is dispositive. A patentee seeking pre-suit damages must affirmatively plead either that patented articles were properly marked or that the accused infringer had actual notice of the asserted patents. Silence on both fronts precludes recovery. *See e-Watch Inc. v. Avigilon Corp.*, 2013 WL 5231521, at *3 (S.D. Tex. Sept. 13, 2013) (dismissing pre-suit damages claim where the complaint failed to allege compliance with § 287: "The Federal Circuit specifically allows addressing the § 287(a) issue through a motion to dismiss."). IV responds that it need not plead marking until **Southwest** identifies a specific unmarked product. Not so. While an alleged infringer who challenges marking must satisfy a low burden of production under *Lubby Holdings LLC v. Chung*, 11 F.4th 1355, 1359 (Fed. Cir. 2021), that framework presumes the plaintiff has first alleged compliance. *Lubby* does not excuse a patentee's failure to plead a basic element of its claim. *See also Express Mobile, Inc. v. DreamHost LLC*, 2021 WL 3772040, at *3 (D. Del. Aug. 25, 2021) ("If a patentee seeks pre-suit damages, it must plead compliance with the marking statute.").

Regardless, Southwest has satisfied its burden of production. Southwest identified Kubernetes, Docker, Spark, Kafka, Hadoop, and networking components from Extreme Networks and Aruba/HPE as unmarked products IV accuses of practicing the asserted patents and noted that these technologies are provided by licensed third-party suppliers who do not mark patented articles. *See* Dkt. 68 at 17. IV concedes this point, yet confusingly argues that because it is not accusing certain

licensed *versions* of those products, it is relieved of its marking obligations. Dkt. 77 at 22. That is not the law. Because IV failed to plead compliance with § 287, its claims for pre-suit damages must be dismissed. *See Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1328–29 (Fed. Cir. 2001).

## III.    DIRECT INFRINGEMENT

IV contends it provides fair notice of Southwest's products and services that allegedly use the accused third-party technologies. Dkt. 77 at 18. That is incorrect—IV has accused *unidentified* Southwest products or services covering Southwest's entire business as "Accused Products and Services," and provided claim charts about *third-party* technologies. That is not sufficient to notify Southwest of what *Southwest* product or service is infringing these patents. *See WirelessWerx IP LLC v. OnStar, LLC*, 2024 WL 1607018, at *10–11 (E.D. Mich. Apr. 12, 2024).

IV's complaint fails because it does not identify the *specific* accused Southwest products or services that allegedly infringe *or* demonstrate any *unauthorized* use of accused third-party programs. Critically, IV admits that *at least some upstream cloud service providers are licensed, see* Dkt. 77 at 22, but does not disclose which cloud service providers are licensed. IV says it is not "accus[ing] public clouds of Southwest if those services are provided by a cloud provider with a license to [IV's] patents that covers Southwest's activities," *id.,* thus conceding that Southwest's public cloud uses may be licensed. Yet, IV asserts its infringement claims are plausible based on the flimsy ground that it "identified Southwest *engineers who work with each technology.*" *See id.* at 22. A Southwest employee's familiarity with accused open-source software says nothing about whether Southwest's use, if any exists, is unauthorized. IV's allegation related to Southwest's cloud technology transition, *id.*, likewise fails to identify a Southwest product or service or show use of any accused third party technologies, much less use of open-source technologies that are not covered by licenses with cloud providers.

Finally, IV's attempt to distinguish *JVC Kenwood*[4] on the ground that it does not license patents through a pool misses the point. The relevant issue is whether, not how, the accused use is licensed. And IV does not dispute that it has licensed the asserted patents to multiple entities. *See* Dkt. 77 at 17; Dkt. 68 at 22. That concession undermines any inference Southwest's cloud use is unlicensed.

## IV.    CONCLUSION

For the foregoing reasons, Southwest respectfully requests that the Court grant its Rule 12(b)(6) motion to dismiss.

---

[4] *JVC Kenwood Corp. v. Nero, Inc.*, 797 F.3d 1039, 1045 (Fed. Cir. 2015).

Dated: October 21, 2025

Respectfully submitted,

*/s/ S. Wallace Dunwoody*
Michael C. Wilson
Texas Bar No. 21704590
mwilson@munckwilson.com
S. Wallace Dunwoody
Texas Bar No. 24040838
wdunwoody@munckwilson.com
**MUNCK WILSON MANDALA, LLP**
2000 McKinney Avenue, Suite 1900
Dallas, Texas 75201
(972) 628-3600
(972) 628-3616 fax

David G. Henry
Texas Bar. No. 09479355
dhenry@munckwilson.com
**MUNCK WILSON MANDALA, LLP**
510 Austin Avenue, Suite 3100
Waco, Texas 76701
(254) 362-2300
(254) 362-2304 fax

Tri T. Truong
Texas Bar No. 24102969
ttruong@munckwilson.com
**MUNCK WILSON MANDALA, LLP**
807 Las Cimas Parkway, Suite 300
Austin, Texas 78756
737-201-1600
737-201-1601 fax

*Attorneys for Southwest Airlines Co.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 21, 2025, the foregoing document has been served on all counsel of record via the Court's CM/ECF system.

*/s/ S. Wallace Dunwoody*
S. Wallace Dunwoody